**Barry Jerome HALL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–03–00253–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Dec. 8, 2004.

Decided Jan. 25, 2005.

Opinion Overruling Rehearing March 8, 2005.

George E. West, Dallas, for appellant.

Christopher Parker, Martin E. Braddy, Asst. Dist. Attys., Sulphur Springs, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

### *Facts and Procedural History*

Late in the evening of May 11, 2002, Trooper Greg Hollingsworth with the Texas Department of Public Safety (DPS) pulled over a car driven by Donna Richardson on Interstate 30, about two hours east of Dallas. The car was rented from a leasing agency in Dallas; it had been leased to Richardson's cousin, Beverly Norris. Richardson was listed as an approved driver on the rental agreement. Appellant, Barry Jerome Hall, who was riding in the front passenger's seat of the car, was not an approved driver. Hollingsworth stopped the vehicle for speeding.

On making contact with Richardson and Hall, Hollingsworth noticed that Richardson was very nervous, even after he advised she would be issued a warning, not a speeding ticket. Hall failed to make eye contact with Hollingsworth. These circumstances, combined with the late hour and the fact that Dallas had shown, in Hollingsworth's experience, to be a source city of illegal narcotics trafficking, aroused his suspicions. He asked Richardson for consent to search the vehicle, and she agreed.

In the trunk, Hollingsworth found a large blue cooler containing drinks and snacks. The cooler also held ice, and Hollingsworth noticed that the ice was not melted. Reaching under the ice, Hollingsworth found two bricks of cocaine wrapped in duct tape. The cocaine weighed 1.97 kilograms.

Richardson pled guilty to a first-degree felony of possession of a controlled substance, cocaine, in an amount more than 400 grams. She was placed on deferred adjudication and was required to testify at Hall's trial.

Hall testified in his own defense and denied any knowledge of the cocaine or the cooler in the trunk. Hall testified that the trip to Dallas was Richardson's idea, that he never put anything in the trunk, and that Richardson's trial testimony was all lies.

The jury convicted Hall and later assessed his punishment at sixty years' confinement and a fine of $40,000.00. The court sentenced Hall accordingly.

### Hall's Points of Error

On appeal, Hall raises four points of error: (1) legal sufficiency of the evidence; (2) failure to instruct the jury that the testimony of the accomplice witness must be corroborated; (3) insufficient corroboration of accomplice Richardson's testimony; and (4) ineffective assistance of counsel at his trial.

We find that the evidence was legally sufficient, but also find that Hall did suffer egregious harm because the trial court did not instruct the jury on the accomplice witness rule. We further find that trial counsel's representation fell below a reasonable standard of competence, thereby prejudicing Hall. We reverse Hall's conviction and remand the case to the trial court for a new trial.

### 1. Legal Sufficiency of Evidence

■ Hall complains there was insufficient evidence to prove he was guilty of possession of more than 400 grams of a controlled substance. The evidence is legally sufficient if, when viewing the relevant evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999).

In sum, the following evidence was presented to the jury:

Richardson testified that she lives in Little Rock, Arkansas; that she became acquainted with Hall, who always drove rental cars; and that Hall was not employed. In May 2002, Hall called her and asked her to ride with him to Dallas, Texas. She went along to visit her sister. Hall picked her up in a rental car, and he drove to Dallas. After arriving in Dallas, Richardson went to her sister's house, and Hall was to call her when he was ready to return to Little Rock. Later that day, Hall called and

said he could not charge another rental car on his credit card and asked her cousin to rent the car so they could return home. Her cousin, Beverly Norris, knew Hall and agreed to rent the vehicle. Richardson obtained the rental car after her cousin rented it, then picked up Hall. Hall asked for the keys to the automobile. They went to a Target store, and Hall purchased a cooler. Hall then placed the cooler in the trunk. They went to a gasoline station and purchased ice. Hall put a bag of ice in the cooler in the trunk. Richardson "had a pretty good idea ... there was something in there that I didn't want to see" "possibly" drugs. They then left Dallas traveling toward Little Rock. There was no doubt in her mind Hall knew exactly what he was going to put in the cooler in the trunk of the car.

Hollingsworth found the 1.97 kilograms of cocaine in a cooler located in the trunk of the vehicle in which Hall was a passenger.

Hollingsworth testified that Dallas is a source city for narcotics and that Interstate 30 is often used as a route on which illegal narcotics are transported.

Hall would not make eye contact with Hollingsworth and continued to look straight ahead as Hollingsworth talked to him.

Hall lied to Hollingsworth about previous arrests.

Rental cars are commonly used by drug runners.

A cooler with ice is a technique used to foil drug dogs.

The cooler was in the trunk, inaccessible to the car's occupants, despite containing food and drinks, while the parties' luggage was in the back seat.

Neither Richardson nor Hall seemed surprised when they were arrested.

After Hollingsworth read Hall his *Miranda*[1] rights and asked him about the drugs and cooler in the car, Hall said he did not know to whom the cooler belonged, and "I'm ready to go" and "put me in the car."

A pager, two cell phones, and a walkie-talkie type radio were in the car.

The jury was presented with Hall's explanation of events leading up to the drugs being found in the car, and it was free to evaluate Hall's credibility.

■ Although there was error in failing to instruct the jury about the need for accomplice Richardson's testimony to be corroborated (as we discuss later in this opinion), in evaluating the legal sufficiency, we review the evidence received and the elements of the offense as defined by the hypothetically-correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim.App.1997) (sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically-correct jury charge which, inter alia, is authorized by the indictment). When considered, we believe the evidence is legally sufficient to support the verdict. Richardson testified Hall initiated the trip, purchased the cooler and ice, and placed them in the trunk where the drugs were found. Other circumstances that Hollingsworth testified were indicative of "moving narcotics" were that Hall was in a rental car, it was late at night, and he was traveling from a known source of drugs. He was a passenger in the vehicle where the drugs were located and was evasive in responding to the officer. Cell phones and a walkie-talkie type radio were located in the car. We find the evidence is legally sufficient.

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## 2. Accomplice Witness Instruction

### a. Error

 Hall complains the trial court erred in failing to include an instruction on the accomplice witness rule in the court's charge. Richardson drove the car and had pled guilty to the same felony with which Hall was charged, and was therefore an accomplice as a matter of law. *See State v. Trevino,* 930 S.W.2d 713 (Tex.App.-Corpus Christi 1996, pet. ref'd). Where the evidence clearly shows a witness is an accomplice as a matter of law, the trial court must so instruct the jury, but if the appellant fails to object to the omission of the instruction, as in Hall's case, he or she must prove egregious harm to prevail on appeal. *Solis v. State,* 792 S.W.2d 95, 98 (Tex.Crim.App.1990). Egregious harm results from errors that deny the defendant a "fair and impartial trial," "go to the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect his defensive theory." *Almanza v. State,* 686 S.W.2d 157, 172 (Tex.Crim.App.1984) (op. on reh'g). "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Hutch v. State,* 922 S.W.2d 166, 171 (Tex. Crim.App.1996); *see Batiste v. State,* 73 S.W.3d 402, 407 (Tex.App.-Dallas 2002, no pet.). In reviewing the trial court's failure to instruct the jury on the accomplice witness rule, we examine the record for evidence corroborating the accomplice witness testimony. If the evidence "clearly warrants conviction independent of the accomplice testimony, the court's failure to instruct on the law of accomplice testimony is not reversible error." *Hall v. State,* 937 S.W.2d 580, 586 (Tex.App.-Texarkana 1996, pet. ref'd), *citing Solis,* 792 S.W.2d at 98.

 A person may not be convicted on the testimony of an accomplice unless there is other evidence tending to connect the defendant to the crime. TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). The corroboration is not sufficient if it merely shows that a crime was committed. *Id.* The test is whether, after excluding the accomplice's testimony, there is other evidence of an incriminating character, which tends to connect the defendant with the commission of the offense. *Burks v. State,* 876 S.W.2d 877, 887 (Tex.Crim.App.1994); *Munoz v. State,* 853 S.W.2d 558, 559 (Tex. Crim.App.1993); *Reed v. State,* 744 S.W.2d 112, 125 (Tex.Crim.App.1988).

A trial court must give the jury "a written charge distinctly setting forth the law applicable to the case...." TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2004–2005). The trial court should have instructed the jury that it could not convict Hall of possession of a controlled substance unless there was evidence other than Richardson's testimony which tended to connect Hall with the offense of possession of the 1.97 kilograms of cocaine in the trunk of the car.

### b. Harm

 However, in this case, Hall did not object to the failure to give an accomplice witness instruction, and under *Almanza* is required to prove that the failure to properly instruct the jury caused him "egregious harm." The Texas Court of Criminal Appeals has stated that the accomplice witness instruction is given to inform the jury that it cannot use the accomplice witness testimony unless there is also some nonaccomplice evidence connecting the defendant to the offense. *Herron v. State,* 86 S.W.3d 621, 631–32 (Tex. Crim.App.2002). Nonaccomplice evidence can render harmless a failure to submit an accomplice witness instruction by fulfilling the purpose of the instruction. *Id.* at 632. A harmless error analysis for the omission of the accomplice witness instruction

should be flexible, taking into account the existence and the strength of any nonaccomplice evidence and the applicable standard of harm. *Id.* Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (nonaccomplice) evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Id., citing Saunders v. State,* 817 S.W.2d 688, 692 (Tex.Crim.App.1991). We point out that this case is not one wherein a proper accomplice witness instruction was given and raises a question on appeal as to whether the corroborating evidence tended to connect the crime to the defendant. In that instance—the jury having been properly instructed that the accomplice witness testimony must be corroborated—great deference should be given to its determination that such corroborating evidence existed.

■ Here, the jury had no such instruction and was authorized, by the jury charge, to convict Hall with no corroborating evidence. The combination of the omission of a proper accomplice witness rule jury instruction and extremely weak evidence corroborating the accomplice may result in a significantly less persuasive case for conviction. *See Saunders,* 817 S.W.2d at 692.

■ To determine the sufficiency of the corroboration, whether an objection was made, we eliminate the testimony of the accomplice witness and examine the testimony of the other witnesses. *See Taylor v. State,* 7 S.W.3d 732, 737 (Tex. App.-Houston [14th Dist.] 1999, no pet.). In determining the strength of the particular item of nonaccomplice evidence, we must examine (1) its reliability or believability, and (2) the strength of its tendency to connect the defendant to the crime. *Herron,* 86 S.W.3d at 632. We consider

the nonaccomplice testimony to be reliable. The important issue is the strength of the evidence in its tendency to connect the defendant to the crime.

■ We believe the nonaccomplice testimony provides a weak inference that Hall was in possession of the drugs found in the cooler in the trunk of the car. The mere presence of a defendant at the scene of the crime is insufficient to corroborate accomplice witness testimony. *Torres v. State,* 137 S.W.3d 191, 196 (Tex.App.-Houston [1st Dist.] 2004, no pet.). The State relies on Hall's conduct at the scene, namely that Hall failed to make eye contact with Trooper Hollingsworth, Hall was slouched in the passenger's seat of the car, and he "lied" to Hollingsworth, saying he had never been arrested. However, in the videotape of the interaction between Hollingsworth and Hall, Hall almost immediately corrected himself and admitted having been arrested for "possession" of a "little 'ol joint," which we take to mean a misdemeanor arrest for possession of marihuana. Admittedly, this is significantly less noteworthy than Hall's two felony convictions for possession of a controlled substance. However, we find Hall's conduct has a weak tendency to connect him with the possession of cocaine found in the rental car's trunk.

Likewise, the fact that Hall refused to make eye contact with Hollingsworth and slouched in his seat is extremely weak in its tendency to connect him with the offense. It is true that "other suspicious circumstances," when coupled with the accused's presence at the scene of the crime, may tend to connect an accused with an offense to such an extent as to corroborate an accomplice witness' testimony. The evidence presents only a tenuous connection to Hall having possession of cocaine. He had no drugs or paraphernalia on his person, and he did not have large sums of

cash. He was not driving the vehicle, did not control it, and had not rented it. The fact that he was traveling on an interstate highway leaving Dallas, Texas, is very weak, if any, support for the conclusion that he was in possession of drugs. The nonaccomplice witness testimony may raise some suspicion or question by a trained officer as to whether a crime is being committed, but it has a very weak tendency to link Hall to such a crime. The corroboration must do more than tend to prove that a crime was committed: corroborating evidence must tend to connect the particular person charged to the crime. Eliminating accomplice Richardson's testimony, there is very little evidence which could adequately corroborate that witness' testimony. This is not to say there was no evidence, outside of the accomplice witness, to support the conviction, but the State's case rested substantially on the testimony of Richardson. The jury instruction was extremely important to the outcome of the case. Considering the weak nature of the nonaccomplice testimony to connect Hall to the crime and the importance of the accomplice witness' testimony, we believe a correct jury charge explaining the accomplice witness rule would have made the State's case much less persuasive. *See Howard v. State,* 972 S.W.2d 121, 128 (Tex.App.-Austin 1998, no pet.).

It is clear that Hall was prejudiced by the failure to instruct the jury on the accomplice witness rule. As stated above, it was clearly error for the trial court not to instruct the jury on the law relevant to the case at bar. Hall's defense at trial was that he had not known about the drugs in the trunk and that Richardson had care, custody, and control over the rental car and its contents, specifically the contents in the trunk. By failing to properly instruct the jury that Richardson's testimony must be corroborated, Hall's defensive theory was vitally affected and egregious harm resulted. *See Almanza,* 686 S.W.2d at 172.

We find that, under the facts of this case, the trial court's error in failing to instruct the jury on the law applicable to the case prejudiced Hall's right to a fair trial and resulted in egregious harm.

### 3. Sufficiency of Evidence Corroborating Accomplice Witness Testimony

Hall also complains there was insufficient evidence to corroborate the accomplice witness, Richardson's, testimony. We have discussed most of the elements of this claim already. As stated above, we find that, had a correct jury charge been given, there is legally sufficient evidence for a rational jury to find all of the elements of this crime beyond a reasonable doubt. However, in light of the facts of this case, failure to give the jury instruction on accomplice witness corroboration amounted to egregious harm. We overrule this point of error.

### 4. Ineffective Assistance of Counsel

Finally, Hall appeals the effectiveness of his trial counsel. When ineffective assistance is raised on direct appeal, appellate counsel and the court must proceed on a trial record not developed for the object of litigating or preserving the claim, and thus it is often incomplete or inadequate for this purpose. *Freeman v. State,* 125 S.W.3d 505, 506 (Tex.Crim.App.2003). Some claims may be disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent from the record." *Id.* at 507, *citing Massaro v. United States,* 538 U.S. 500, 508, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). After careful analysis, and cognizant of the Texas Court of Criminal Appeals' cautious eye toward such claims made on direct appeal, we

nonetheless find this to be a case where counsel's errors have undermined confidence in the trial's outcome.

The standard for testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986). To prevail on a claim of ineffective assistance, an appellant must, by a preponderance of the evidence, prove: (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) counsel's deficient representation prejudiced appellant's defense. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim.App.2002); *Rosales v. State*, 4 S.W.3d 228, 231 (Tex.Crim.App.1999). To meet this burden, an appellant must show that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App.2000). In other words, the appellant must prove counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052 . If, however, "there is at least the possibility that the conduct could have been legitimate trial strategy," then we must "defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Murphy v. State*, 112 S.W.3d 592, 601 (Tex. Crim.App.2003).

■■■ Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *Tong*, 25 S.W.3d at 712. An appellate court should not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex.Crim.App.1979). That another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State*, 997 S.W.2d 695, 704 (Tex. App.-Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999).

**a. Failure to Request Instruction on Accomplice Witness Testimony**

■■■ Counsel did not request a jury instruction that the accomplice witness testimony must be corroborated. The failure of counsel to request an accomplice witness instruction when facts warrant such an instruction may constitute deficient performance. *Henson v. State*, 915 S.W.2d 186, 197 (Tex.App.-Corpus Christi 1996, no pet.), *citing Ex parte Zepeda*, 819 S.W.2d 874, 877 (Tex.Crim.App.1991); *see Hernandez v. State*, 907 S.W.2d 654, 660 (Tex. App.-Corpus Christi 1995, pet. filed) (Hinojosa, J., dissenting). We have previously discussed the weak nature of the evidence corroborating the testimony of Richardson. In such instance, it is even more crucial that a jury be properly instructed on this issue. Here, the jury was authorized to convict Hall without any corroborating evidence, which relieved the State from proving the portion of its case that would have been the most difficult to prove. Under the facts of this case, which have been fully discussed previously, we find the failure to request a proper accomplice witness jury

instruction to be deficient performance by defense counsel.

### b. Failure to Object to Evidence of Unadjudicated Offenses

 Hall points to several other instances of his trial counsel's conduct that support a finding of ineffectiveness. Chief among these is counsel's failure to object to the State's references to Hall's arrests for unadjudicated offenses or to request a limiting instruction be given to the jury for the extraneous arrests. During the guilt/innocence phase of the trial, while cross-examining Hall, the State was allowed to ask him how many times he had been arrested. Hall stated, "[t]wice plus this one be three." Then the following interchange occurred:

Q [Prosecutor] Okay. In 1992 there in Little Rock, Arkansas, you were arrested for credit card fraud, weren't you?

A [Hall] No, sir.

Q In 1994 you were arrested for aggravated assault, engaging in violent criminal activity, unlawfully discharging of a firearm from a vehicle, weren't you?

A I wasn't convicted of it.

Q I'm sorry?

A I wasn't convicted of that.

. . . .

Q . . . . Do you understand my question? Have you been arrested in 1994 for aggravated assault? Yes or no?

A Yes.

. . . .

Q Were you arrested for unlawfully discharging a firearm from a vehicle? Yes or no?

Drive-by shooting is what that's commonly called, right? Right?

A I guess.

Q Engaging in violent criminal activity. That would [be] gang-banging, right, Mr. Hall? That's what you'd call it on the street, wouldn't you, Mr. Hall?

A I have no recollection of that, sir.

No evidence was offered that Hall had been convicted of credit card abuse, aggravated assault, engaging in violent criminal activity, or unlawfully discharging a firearm from a vehicle. Hall's trial counsel never objected, and the State continued to question Hall, referring to the unadjudicated offenses as "gang-banging" and "drive-by shooting." Specifically, the State mentioned Hall's alleged history of "gang-banging" at least five times in the span of six pages of cross-examination. This conduct was alleged to have happened about 1992 or 1994; Hall once said he was in the tenth grade when it happened, later in the twelfth. The State next questioned Hall about his felony convictions in March 1996 for delivery of a controlled substance. Later, the State attempted to show Hall a copy of a charging instrument from the (unproved) charges of aggravated assault, engaging in violent criminal activity, and unlawfully discharging a firearm from a vehicle. A short, unrecorded bench conference was held, and the State ceased this line of questioning and passed the witness.

 Hall's felony convictions were admissible when he took the stand. *See* TEX.R. EVID. 609. The trial court and Hall's trial counsel warned Hall that his prior convictions could be admitted if he testified. Of a different cloth, though, is the introduction of alleged prior bad acts by Hall as many as eleven years before the instant trial. If extraneous offense evidence is not relevant apart from supporting inference of character conformity, it is inadmissible. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex.Crim.App.1990) (op. on reh'g). We can find no basis for the admission of the unadjudicated offenses of credit card abuse, aggravated assault, engaging in violent criminal activity, or un-

lawfully discharging a firearm from a vehicle. There was no showing that Hall was ever found guilty of any of these offenses, and there was no evidence offered to show beyond a reasonable doubt Hall committed these offenses. Evidence of other "crimes, wrongs or acts" may be admissible if it has relevance apart from its tendency to prove the character of a person in order to show that he or she acted in conformity therewith. TEX.R. EVID. 404(b). A party may introduce such evidence where it logically serves to make more or less probable an elemental fact or an evidentiary fact that inferentially leads to an elemental fact. *Bishop v. State,* 869 S.W.2d 342, 346 (Tex. Crim.App.1993); *Montgomery,* 810 S.W.2d at 387–88. The extraneous offenses introduced by the State had nothing to do with the offense charged in this case. They were clearly objectionable and inadmissible. As they had no probative value regarding the charged offense, they were prejudicial and, on proper objection, should not have been admitted.

▮ The question is whether failure to object to these alleged bad acts constitutes ineffective assistance of counsel. Extraneous offenses are inherently prejudicial, and when counsel fails to object to numerous extraneous and prejudicial matters, counsel is ineffective. *Brown v. State,* 974 S.W.2d 289, 293 (Tex.App.-San Antonio 1998, pet. ref'd), *citing Williams v. State,* 662 S.W.2d 344, 346 (Tex.Crim.App.1983); *Cude v. State,* 588 S.W.2d 895 (Tex.Crim. App.1979); *Wenzy v. State,* 855 S.W.2d 52, 58 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd). There was no showing of how charges of credit card fraud, aggravated assault, engaging in violent criminal activity, and unlawfully discharging a firearm from a vehicle would have been admissible

or relevant to Hall's charged crime of possession of more than 400 grams of cocaine.[2] As there was no possible basis for the admission of previous bad acts by Hall (of which he had not been convicted), trial counsel was deficient in failing to object. *Cf. Ortiz v. State,* 93 S.W.3d 79, 93 (Tex. Crim.App.2002), *cert. denied,* 538 U.S. 998, 123 S.Ct. 1901, 155 L.Ed.2d 824 (2003) (to base a claim of ineffective assistance on counsel's failure to object to admission of evidence, claimant must show the evidence was not admissible; defendant's membership in a prison gang admissible to prove access to heroin and rebut defense's impeachment evidence).

### c. Failure to Object to State's Comment on Post–Arrest Silence

▮ Hall claims trial counsel was ineffective for failing to object to comments of the State during opening and closing arguments. The State said that, after being arrested, Hall "chose not to" give a statement or explanation to the officer. After Hollingsworth received consent from Richardson to search the vehicle, he can be heard going through the ice in the cooler. He then placed Hall, then Richardson, under arrest, read them their *Miranda* rights separately, and also separately asked each to whom the cooler belonged and what was in the cooler.

▮ As seen on the videotape exhibit of the stop, Hall had clearly been arrested and read his *Miranda* rights. His comments to the effect of "put me in the car" and "I'm ready to go," together with a statement that he did not wish to speak to Hollingsworth further without consulting a lawyer, clearly indicate Hall's intent to avail himself of his right to remain silent. The Fifth Amendment to the United

---

**2.** The State, in its brief, does not address the admission of Hall's prior arrests or unadjudicated offenses.

States Constitution protects post-arrest silence after *Miranda* warnings have been given, and the Texas Constitution protects a defendant's post-arrest silence even before such warnings have been administered. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex.Crim.App.2004), *citing Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982); *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (that the Fifth Amendment to the United States Constitution protects post-arrest silence after *Miranda* warnings are given); *Sanchez v. State*, 707 S.W.2d 575, 582 (Tex.Crim.App.1986) (that the Texas Constitution protects a defendant's post-arrest silence even before *Miranda* warnings have been given). The State referred to Hall's silence in the opening statement and closing argument. The State's comments were objectionable, and had Hall's trial counsel made a timely objection, the trial court would have been obligated to sustain such objections.

### d. Do These Errors Amount to Ineffective Assistance?

 We have identified three discernible deficiencies on the part of trial counsel.[3] Although we regard trial counsel's performance with deference and consider the totality of his representation, a full inquiry into the strategy or tactics of counsel should be made only if, from all appearances after trial, there is no plausible basis in strategy or tactics for counsel's actions. *See Johnson v. State*, 614 S.W.2d 148, 152 (Tex.Crim.App. [Panel Op.] 1981);

*Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim.App.1980); *Stenson v. State*, 695 S.W.2d 569, 571 (Tex.App.-Dallas 1984, no pet.).

We are well aware of the difficulties in evaluating trial counsel's competency on direct appeal, and generally such claims are better pursued in the arena of habeas corpus.[4] We cannot envision a reason for counsel's failure to request an instruction on accomplice witness testimony, for allowing the State to question Hall about unadjudicated offenses, or for failing to object to comments by the State about Hall's post-arrest silence. We next consider whether, but for these deficiencies, there is a reasonable probability that the result of the trial would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Hernandez*, 907 S.W.2d at 660 (Hinojosa, J., dissenting).

The *Strickland* prejudice prong requires the defendant to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine the court's confidence in the outcome. *Id.* When addressing this second step of *Strickland*, the reviewing court should examine counsel's errors not as isolated incidents, but in the context of the overall record. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Crim.App. 1986).

---

**3.** Hall also complains of other inadequacies in trial counsel's representation, including not objecting to certain comments of the State during opening and closing arguments, bolstering codefendant Richardson's testimony, and inserting the prosecutor's personal opinions into the arguments. We will not address those, as we find the issues addressed to be dispositive.

**4.** *See Aldrich v. State,* 104 S.W.3d 890, 896 (Tex.Crim.App.2003) (the proper procedure for raising an ineffective assistance claim is therefore almost always habeas corpus); *Ryan v. State,* 937 S.W.2d 93, 98 (Tex.App.-Beaumont 1996, pet. ref'd) ("When the record contains no evidence of the reasoning behind trial counsel's action, we cannot conclude counsel's performance was deficient.").

Even on direct appeal, without any record of Hall's trial counsel's reasons or strategies, we conclude there could be no sound basis for certain aspects of his representation. Failing to object to the omission of an accomplice witness instruction allowed the jury to convict without any corroborating evidence. The facts of this case, particularly, demanded that a jury have the proper instruction requiring corroboration of the accomplice witness testimony. Allowing the State to cross-examine Hall, without objection, about previous charges and arrests, not clearly related or relevant to the instant crime, and refer to the charges as "drive-by shooting" and "gang-banging" and using them in jury argument was extremely and unfairly prejudicial. Commenting on Hall's failure to offer an explanation of the drugs in the trunk, after Hall had received his *Miranda* warnings and told Hollingsworth he did not want to continue the interview, was likewise prejudicial error. After considering the combined effects of these failures by counsel, we find counsel's deficient performance prejudiced Hall's defense and so undermined the trial process that the trial cannot be relied on as having produced a just result. We find there is a reasonable probability that, but for counsel's deficiencies during trial, the result would have been different.

We reverse the judgment and remand this case to the trial court for a new trial.

## OPINION ON MOTION FOR REHEARING

The State asserts in its motion for rehearing that it is "well settled that evidence of past bad conduct is admissible against the accused if the Defendant leaves a false impression with the jury regarding the extent of his past troubles with the law." *See Prescott v. State,* 744 S.W.2d 128, 131 (Tex.Crim.App.1988). Relying on

that accurate statement of law, the State argues that the cross-examination of Hall regarding his prior unadjudicated arrests was proper and therefore failure of counsel to object to such evidence was sound strategy. We disagree.

The rationale for the State's argument is that, at the time of his arrest, Hall gave statements to the arresting officer minimizing his prior arrest record. The videotape of the arrest was introduced by the State without objection. Generally, a defendant may be impeached only with conduct resulting in a felony conviction or crime of moral turpitude. TEX.R. EVID. 609(a). An exception to that general rule arises when a witness leaves a false impression as to the extent of either his or her prior (1) arrests, (2) convictions, (3) charges, or (4) "trouble" with the police. *Prescott,* 744 S.W.2d at 130–31. "The exception does not apply when the false impression is created by the State's cross-examination of the defendant." *Shipman v. State,* 604 S.W.2d 182, 184–85 (Tex. Crim.App. [Panel Op.] 1980). A critical element of such a situation is that the defendant voluntarily testifies about the collateral matter, usually his or her trouble or lack thereof with law enforcement authorities.

[W]hen a defendant voluntarily testifies as to his prior criminal record without any prompting or maneuvering on the part of the State's attorney and in so doing he leaves a false impression with the jury, the State is allowed to correct that false impression by introducing evidence of the defendant's prior criminal record.

*Martinez v. State,* 728 S.W.2d 360, 362 (Tex.Crim.App.1987).

Hall did not create a false impression by any of his testimony on direct examination or by any volunteered statement on cross-examination. The State ar-

gues that Hall created a false impression by his answers to questions asked of him at the time of his arrest, which the State introduced. The State then cross-examined Hall concerning his prior unadjudicated arrests, referring to them as "drive-by shooting" and "gang-banging." The Texas Court of Criminal Appeals has made it clear that impeachment to correct a false impression can only be done when the defendant has voluntarily testified to the collateral matter. *See Lopez v. State,* 928 S.W.2d 528, 531 (Tex.Crim.App.1996). The State cannot open the door to matters not otherwise admissible and prove the collateral events, unless the events themselves were independently admissible. *Alexander v. State,* 740 S.W.2d 749, 764 (Tex. Crim.App.1987).

The State further argues not only that this evidence was proper, but also that trial counsel acted appropriately in failing to object to the State's cross-examination concerning the unadjudicated arrests. To the contrary, we believe that this sequence of events further emphasizes the deficiency in trial counsel's performance. Counsel failed to object to that part of the videotape referring to prior arrests for unadjudicated offenses. There was no sound trial strategy for failing to object to such evidence when it was originally presented by the State's videotape or in failing to object to the State's cross-examination on the unadjudicated arrests.

We overrule the State's motion for rehearing.