

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00132-CR

_____

ROYLAND EARL BLACK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 7th Judicial District Court
Smith County, Texas
Trial Court No. 007-1931-09

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Having elected to waive a jury, Royland Earl Black was convicted in a bench trial of felony driving while intoxicated (DWI)[1] and was sentenced to six years' confinement in the Texas Department of Criminal Justice–Institutional Division. Black challenges his conviction, alleging that: (1) his trial counsel's assistance was ineffective because counsel allowed him to plead guilty prior to having first received a copy of a toxicology report; (2) the trial court failed to consider the full range of punishment; and (3) the trial court improperly assessed what the court believed a Smith County[2] jury would assess as punishment. We affirm the trial court's judgment.

On September 14, 2009, Officer Matthew D. Leigeber arrived at the scene of an automobile collision involving a white pickup truck driven by Black and an unoccupied red Chevrolet Camaro. Black had collided with the back of the Camaro, but remained in his truck "in the middle of the roadway" with the engine still running. Leigeber approached his truck and tapped on the closed driver's side window. According to Leigeber, Black "turned and looked at me. And that was his only response. And I continued to try and talk to him, to get him to open the door or roll the window down." Black failed to respond. Instead, Black "just put [the truck]

---

[1]Black entered pleas of "true" to two prior felony DWI convictions.

[2]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

in reverse and started to back out; started to leave." Leigeber "bang[ed] a lot louder on the glass," whereupon Black stopped his activities and unlocked the door.

Upon initial contact, Leigeber described Black as "very sleepy and very lethargic," and "mumbl[ing], very slow[ly]." Black was unable to tell Leigeber either the date or the year. At that time, Black denied that he suffered any medical problems and further denied having struck the Camaro with his truck. Although Leigeber removed the key from the ignition, Black "started reaching for the ignition, trying to start the truck back up." Officer Scott Behrend arrived and described Black as "completely confused about where he was and what he was doing." Black was unable to follow instructions during the administration of horizontal and vertical gaze nystagmus tests, both of which indicated intoxication. Behrend conducted a search of the truck Black had been piloting and found an empty pill bottle for legally prescribed Carisoprodol (Soma), a drug which can cause dizziness. Black then stated he was under the care of a doctor due to back problems. Emergency medical services were called and, because Black was not in a condition to stand, he was placed on a stretcher and transported to a hospital.

Behrend followed the ambulance to the hospital and obtained Black's consent to take a blood sample. Black admitted to Behrend that he had ingested Soma and that he "kn[e]w not to drive." Toxicologist Alexis Wilcox testified that the blood sample contained "[a] little higher" than therapeutic levels of Hydrocodone and Soma, as well as Meprobamate. Because the drugs cause "dizziness, drowsiness, the person to be sleepy, slurred speech, [and] slowed reflexes,"

3

Wilcox stated they could cause someone to lose the normal use of their mental or physical faculties.   Black was transported to jail after his release from the hospital.

Following presentation of this evidence, the trial court found Black guilty of DWI.

## I.      Black Received Effective Assistance of Counsel

We begin our analysis with the rule that any allegation of ineffectiveness of counsel must be firmly founded in the record.   *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003).   From the record received by this Court, Black bears the burden of proving that counsel was ineffective by a preponderance of the evidence.   *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).

We apply the two-pronged *Strickland* test promulgated by the United States Supreme Court to determine whether Black received ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984).   Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006).   Thus, if one of the prongs in the *Strickland* test is not met, we need not examine whether the other has been satisfied. *Strickland*, 466 U.S. at 697.

First, Black must show that trial counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms. *Id.* at 687–88.   There is a strong

4

presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Id*. at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). We will not simply second-guess the strategy of Black's counsel at trial through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd).

The second *Strickland* prejudice prong requires a showing that but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88.

Black argues that counsel persuaded him to plead guilty prior to receiving the toxicology report. Counsel's advice came after consultation with Black. It is possible that statements or admissions may have been made by Black to his counsel during such consultation. Black's counsel told the court he advised his client to plead guilty because "[t]here were certain pressures to deal with, Your Honor, timewise and negotiation-wise." The record indicates that counsel may have advised Black to enter a plea of guilty in an effort to resolve the case in a favorable manner. Without other evidence that this strategy was fatally flawed, we decline to second-guess the strategy of Black's counsel through hindsight.

As for the second *Strickland* prong, we first note that Black withdrew his plea of guilty. Black argues "the damage was done" because the trial court was "left with the indelible impression

that Appellant was guilty before any evidence was presented at the bench trial." No authority or citation to the record is cited to support Black's proposition, and the idea that the plea left the "indelible impression" of Black's guilt, or that the court otherwise considered the withdrawn plea, is speculation. We are not going to indulge in the presumption that such a withdrawn plea of guilty would taint the obligation of the trial court to consider only the facts presented it during trial. In any event, the toxicology report indicated the presence of more than therapeutic levels of Hydrocodone and Soma (in addition to another drug), facts that would not have aided Black's defense of the charge. Combined with the video recording supporting the finding of intoxication, we conclude that Black failed to satisfy the second prong of the *Strickland* test (i.e., a requirement that the result of the proceeding would have been different had he never entered a guilty plea).

This point of error is overruled.

## II. Black Failed to Preserve Issues Relating to Punishment

Black cites to the following three statements made by the trial court during the punishment phase to suggest that the trial court did not consider the full range of punishment:

I always assess these, as I said earlier, on what I think a Smith County jury would do.

. . . .

I also continue to think, even with all that I've heard over the last two days, that a Smith County jury would think that [six years' confinement] was a reasonable sentence for each one of these cases, based upon the histories.[3]

---

[3]The trial court referred to a recently tried January 30, 2009, DWI case which had been appealed and was the subject of this Court's opinion in cause number 06-10-00131-CR.

6

Black argues that these excerpts demonstrated that the trial court foreclosed the opportunity for community supervision of any kind. He complains that the trial court erred in violating his rights to "due process and due course of law."

We have previously stated:

A court denies due process and due course of law if it arbitrarily refuses to consider the entire range of punishment for an offense or refuses to consider the evidence and imposes a predetermined punishment. Such a complaint is not preserved for review unless a timely objection is raised.

*Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet. ref'd) (citations omitted); *see Washington v. State*, 71 S.W.3d 498, 499 (Tex. App.—Tyler 2002, no pet.).[4] Black concedes in his brief, and the record demonstrates, that he failed to raise this issue with the trial court. Because this point of error has not been preserved, it is overruled.[5] *See* TEX. R. APP. P. 33.1.

In any event, Black fails to cite the following portion of the record where the trial court stated:

On the other hand, you've got two felony DWIs that come pretty close together. [The jury] would have heard that you had failed on a prior DWI probation, which I think always weighs pretty heavily on them never granting probation on people that

---

[4]Black argues that failure to consider the entire range of punishment is a structural error and need not be preserved by contemporaneous objection. This argument has been made before the Texas Court of Criminal Appeals in the past. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). The court declined to decide whether such a complaint must be preserved by a contemporaneous objection, instead holding that the trial court in that case considered the entire range of punishment. Thus, we rely on our precedent and that of the Twelfth Court of Appeals holding that Black's complaint required an objection to the trial court below in order to preserve the issue for review. *Willis v. State*, No. 12-09-00195-CR, 2010 WL 1215145, at *1 (Tex. App.—Tyler Mar. 30, 2010, no pet.) (mem. op., not designated for publication).

[5]Black does not complain that counsel was ineffective for failing to raise this issue.

7

have failed on probations. Even though you would have been eligible, I don't think they would have given it to you. I've considered it, but I don't find it appropriate either.

Had this point of error been preserved, the record would nevertheless demonstrate that because the trial court considered community supervision, but found it inappropriate, Black's contention that the trial court did not consider the full range of punishment was without merit.

## III.    Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:      February 1, 2011
Date Decided:       February 2, 2011

Do Not Publish

8