

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00131-CR

_____

ROYLAND EARL BLACK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 7th Judicial District Court
Smith County, Texas
Trial Court No. 007-1631-09

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

One could say that Royland Earl Black was essentially asleep at the wheel when Officer Letitia Powell encountered his driving in Smith County[1] in early 2009. In a trial to the court, Black was found guilty of driving while intoxicated (DWI), his sentence was enhanced to the equivalent of a third degree felony, and Black was sentenced to six years' confinement. We affirm the trial court's judgment, because (1) Black has not demonstrated that his trial counsel was ineffective, and (2) Black cannot prevail on his claim that the trial court failed to consider the full range of punishment.

Powell was patrolling the streets on or about January 30, 2009, when a radio broadcast informed her of a possible intoxicated driver at a local intersection. Responding to the call, Powell spotted a white truck driven by Black "failing to maintain a single lane." She pulled up behind the truck at a red light and engaged her patrol car lights. Although the light had turned green, the truck remained stopped in the middle of the street. After Powell used her unit's loudspeaker to ask Black to "pull off the main roadway," Black drove through the green light and continued to drive down the road without stopping. He led Powell on a two-mile low-speed chase even though the patrol car's "take-downs, which is a brighter white light," siren, and horn were used. Black finally pulled over into a Church's Chicken parking lot.

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

Upon initial contact, Black was, according to Powell, "extremely slow to respond" to commands, was "unsteady," "swayed," and "needed assistance" when exiting the vehicle. After Black exhibited difficulty in following instructions during administration of the horizontal gaze nystagmus (HGN)[2] test, failed to understand and maintain balance during the walk-and-turn test, and performed unsatisfactorily on the one-leg-stand test, Powell concluded that Black was intoxicated. Before the tests were administered, Black denied having any medical issues, but later informed Powell he had diabetes and a bad back, and admitted to ingesting "a Vicodin." Assisting Powell, Officer Donald Shafer recovered five "Soma" prescription drug pills from a search of Black's truck.[3]

Black was arrested and agreed to provide a blood sample to nurse Shirley Dudley. Eduardo Padilla of the Texas Department of Public Safety Crime Laboratory testified that the initial drug screen of Black's blood sample revealed the presence of prescription drugs Hydrocodone, Meprobamate, and Carisoprodol (Soma). The drugs were legally prescribed to Black.

In a statement given after his arrest and during trial, Black said he had "blacked out" while driving. Black's brother, who was a passenger in the truck, told Shafer "he was scared; that

---

[2] The result of the HGN test did not indicate intoxication because Black was not under the influence of depressants.

[3] A video recording of the stop and arrest depicting these events was played during the bench trial.

3

[Black] wouldn't stop, and that he had to physically grab control of the steering wheel and make the vehicle turn into the . . . Church's Chicken parking lot."

Padilla testified that the two drugs found in Black's system could cause "drowsiness, dizziness, slurred speech, blurred vision, [and] lack of motor skills." He also informed that the combination of the drugs could cause loss of the normal use of mental or physical faculties, and the amount of Hydrocodone in the blood sample was "on the high side." Black took the stand and admitted during cross-examination that he had previously been convicted of DWI in 2007 for driving after ingesting his regular medication.

*(1) Black Has Not Demonstrated that His Trial Counsel Was Ineffective*

We begin our analysis with the rule that any allegation of ineffectiveness of counsel must be firmly founded in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003). From the record received by this Court, Black bears the burden of proving that counsel was ineffective by a preponderance of the evidence. *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).

We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to determine whether Black received ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Failure to satisfy either prong of the *Strickland* test is fatal.

4

*Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006). Thus, we need not examine both *Strickland* prongs if one cannot be met. *Strickland*, 466 U.S. at 697.

First, Black must show that counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms. *Id.* at 687–88. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Id.* at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Therefore, we will not second-guess the strategy of Black's counsel at trial through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd).

The second *Strickland* prong, prejudice, requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88.

### A.    The Guilty Plea Before Receipt of the Toxicology Report

Black argues that counsel persuaded him to plead guilty before receiving the toxicology report. Counsel's advice came after consultation with Black. It is possible statements or admissions may have been made to counsel during such consultation. Black's counsel told the court he advised his client to plead guilty because "[t]here were certain pressures to deal with, Your Honor, timewise and negotiation-wise." The record indicates counsel may have advised

5

Black to enter a plea of guilty in an effort to resolve the case in a favorable manner. Often, defense counsel have various reasonable paths to take in defending their clients; choosing one is part of trial strategy and will not be held ineffective unless no reasonable attorney would choose that path. *See Harrington v. Richter*, No. 09-587, 2011 WL 148587, at \*14–16 (U.S. Jan. 19, 2011) (choice not to use particular expert for scientific analysis of blood). We decline to second-guess the strategy of Black's counsel through hindsight.

Undermining the harm prong of the *Strickland* test, the guilty plea was withdrawn. Black argues "the damage was done" because the court was "left with the indelible impression that Appellant was guilty before any evidence was presented at the bench trial." No authority or citation to the record is cited to support Black's proposition, and the idea that the plea left the "indelible impression" of Black's guilt, or that the court otherwise considered the withdrawn plea, is speculation.

In any event, the toxicology report indicated the presence of a high amount of Hydrocodone in addition to two other prescription drugs, facts that do not aid Black's defense. Combined with the video supporting the finding of intoxication, we conclude Black fails to meet the second prong of *Strickland* requiring a showing that the result of the proceeding would have been different had he never entered a guilty plea. No ineffective assistance of counsel is shown relative to the guilty plea.

B. *Counsel Attempts to Testify About His Own Experiences with Blackouts*

6

Black's counsel took the stand and began testifying about an experience he had with a blackout while in court. The State's objection to the relevance of counsel's testimony was sustained, and the testimony was struck. Yet, Black argues, without support in the form of caselaw or record citation, that his counsel's testimony "tainted Appellant's defense and doubtless caused the trial court to question counsel's defense strategy."

We find that Black has failed to rebut the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. Black was intoxicated if he did "not have the normal use of mental or physical faculties by reason of the introduction of . . . a drug, . . . or any other substance into [his] body." TEX. PENAL CODE ANN. § 49.01(2)(A) (Vernon 2003). If his blackout was caused by the ingestion of drugs, Black could be found guilty of DWI. Counsel's trial strategy in testifying about his personal experience could have been to support the defense theory that a blackout could be caused by reasons other than ingestion of drugs. The first prong of *Strickland* has not been met. Additionally, Black's contention that the stricken testimony tainted the defense is speculative and does not establish that the result of the proceeding would have been different. Thus, he cannot meet the second *Strickland* prong. No ineffective assistance of counsel is shown relative to counsel's attempted testimony.

C.      *Judge's Comments About Experience with a Driver Who Had Blacked Out*

After both sides rested and the punishment phase was closed, the trial court stated:

7

> I had a wreck years ago as a young person where a lady had a blackout and she ran a stop sign and hit us broadside, so I know it can happen. The evidence shows that's just a made-up defense on your part, particularly, whenever you see what the presentence . . . contains about what your brother said.

Black argues that counsel should have objected to the statement and should have made an "effort to attempt to have the judge declare a mistrial and recuse himself." Due process requires a neutral and detached trial court. *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). "Absent a clear showing of bias, a trial court's actions will be presumed to have been correct." *Brumit*, 206 S.W.3d at 645 (citing *Thompson v. State*, 641 S.W.2d 920, 921 (Tex. Crim. App. 1982)). The comments of the trial court here do not reflect bias or partiality. Rather, they reflect an understanding by the trial court that blackouts can occur without intoxication. Because there was no clear showing of bias, there was no reason for Black's counsel to object. Black cannot meet the first prong of *Strickland*. No ineffective assistance of counsel is shown relative to the trial court's statements about experience with a driver who blacked out.

*(2)    Black Cannot Prevail on His Claim that the Trial Court Failed to Consider the Full Range of Punishment*

Black cites to the following three statements made by the trial court during the punishment hearing to suggest that the trial court did not consider the full range of punishment:

> I try to always assess cases when I'm asked to do this type of sentencing—or not sentencing, but trial of a defendant by way of a bench matter without a jury, to try to

8

assess it how I think the jury would assess it in Smith County, Texas. Because I think a defendant shouldn't be handled any differently, whether it's a jury listening to the evidence and resolving the case.

. . . I always try to assess these based upon what I think a Smith County jury would do in the case in relation to the punishment of cases. I think they would have considered probation, too. I think they would have considered it extremely briefly.

. . . I don't think a jury would spend long thinking about that eligibility for probation whenever they have someone that they would have just convicted of a felony DWI, and that they are aware—at that point, if they had been doing it, they would have been aware that you were at least charged with this second one.[4]

Black argues that these excerpts demonstrated that the court foreclosed the opportunity for community supervision of any kind. He complains the trial court erred in violating his rights to "due process and due course of law."

> A court denies due process and due course of law if it arbitrarily refuses to consider the entire range of punishment for an offense or refuses to consider the evidence and imposes a predetermined punishment. Such a complaint is not preserved for review unless a timely objection is raised.

*Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet. ref'd) (citations omitted);

*see Washington v. State*, 71 S.W.3d 498, 499 (Tex. App.—Tyler 2002, no pet.).[5] Black admits in

---

[4]The trial court referred to a subsequent September 14, 2009, DWI discussed in our cause number 06-10-00132-CR.

[5]Black argues that failure to consider the entire range of punishment is a structural error and need not be preserved by contemporaneous objection. This argument has been made before the Texas Court of Criminal Appeals in the past. *See Brumit*, 206 S.W.3d at 645. The court declined to decide whether such a complaint must be preserved by a contemporaneous objection, instead holding that the trial court in that case considered the entire range of punishment. Thus, we rely on our precedent and that of the Twelfth Court of Appeals, holding that Black's complaint required an objection to the trial court below in order to preserve the issue for review. *Willis v. State*, No. 12-09-00195-CR, 2010 WL 1215145, at *1 (Tex. App.—Tyler March 30, 2010, no pet.) (mem. op., not designated for publication).

his brief, and the record demonstrates, that he failed to raise this issue with the trial court. Because this point of error has not been preserved, it is overruled.[6]  *See* TEX. R. APP. P. 33.1.

In any event, Black makes no reference to the trial court's statement, "I've considered, Mr. Black, probation for you."  Omitted also was the court's statement, "I don't think [the jury] would spend much time contemplating—while they would have considered it, just as I've considered it, I don't find [community supervision] to be appropriate."  Had this point of error been preserved, the record would nevertheless fail to support Black's contention that the court did not consider the full range of punishment.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:    February 1, 2011
Date Decided:      February 2, 2011

Do Not Publish

---

[6]Black does not complain that counsel was ineffective for failing to raise this issue.

10