[JH1] 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-026-CR

 

 

RHONDA RENEE JONES                                                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 30TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                OPINION
ON REHEARING

 

                                              ------------

I.  Introduction

After reconsidering our prior
opinion on appellant Rhonda Renee Jones=s motion for rehearing, we deny the motion, but we withdraw our March
2, 2006 opinion and judgment and substitute the following in their place in
order to clarify parts of our original opinion. 








Appellant Rhonda Renee Jones
appeals her conviction and sentence of twenty-five years= confinement and a $10,000 fine for possession of 400 or more grams of
methamphetamine with intent to deliver. 
In her first point, appellant complains that the trial court erred by
failing to instruct the jury that Marcus Benner was an accomplice as a matter
of law.  Appellant further argues that
the error was egregious and reversible because the State could not prove the
quantity of the methamphetamine without Benner=s testimony.  In appellant=s second and third points, she contends that the evidence is legally
and factually insufficient to show that she possessed 400 or more grams of
methamphetamine with intent to deliver. 
We affirm.

II.  Background Facts

On January 23, 2003, Deputy
Marvin Eddy and Deputy George Goolsby, 

officers with the Wichita County Sheriff=s Department, were dispatched to respond to a call after receiving a
report that a suspicious vehicle was parked on Bohner Road, near Burkburnett,
Texas, and that the car was emitting a chemical odor.  When Deputies Eddy and Goolsby arrived at the
scene at approximately 8:30 a.m., they saw two people and a dog sitting in a
dark colored car parked in the roadway. 
It was later determined that appellant was the driver of the car and
Benner was the passenger.  








As the deputies got closer, a
white substance was thrown from the passenger window, and they could smell a
chemical odor typically associated with methamphetamine labs emanating from the
car.  After Deputy Eddy activated his
patrol lights, appellant sped off and started going west on Bohner Road.  Appellant then slowed down and pulled over as
if she was going to stop. However, after Deputy Eddy put his patrol car in park
and began to get out, appellant took off again and proceeded down the
road.  Deputy Eddy followed her.  During the chase, several items, including
coffee filters and plastic containers, were thrown from the passenger side
window of appellant=s car.

After appellant turned east
on Thrift Road, her car began to fill with smoke.  Benner then threw a container with Asmoke . . . billowing out@ out of the window.  After
noticing that a Department of Public Safety trooper was coming in the opposite
direction, appellant pulled the car over, and appellant and Benner got out and
were arrested for evading arrest.

During appellant=s trial for possession of a controlled substance with intent to
deliver and evading arrest, Benner testified for the State as part of his plea
bargain agreement with the State.[1]  Benner testified that appellant knowingly
participated in making the methamphetamine. 
He stated that they were making the methamphetamine for their own
personal use just before the deputies arrived.  









 Appellant was indicted for possession of
methamphetamine with intent to deliver and evading arrest or detention using a
vehicle.  A jury found appellant guilty
of both offenses and the trial court sentenced appellant to twenty-five years
in TDCJ and a $10,000 fine for possession of a controlled substance with intent
to deliver and two years in a state jail facility for evading arrest.  Appellant is only appealing her conviction
for the possession offense. 

III. Legal and Factual
Sufficiency

Because a finding of legal
insufficiency results in an affirmative judgment in appellant=s favor rather than vacation of the judgment against her, a successful
legal insufficiency issue would provide somewhat greater relief to
appellant.  Nickerson v. State, 69
S.W.3d 661, 668 (Tex. App._Waco 2002, pet. ref=d).  Therefore, we will address
appellant=s second and
third points first.  In points two and
three, appellant contends that the evidence is legally and factually
insufficient to prove that she possessed with the intent to deliver a quantity
of methamphetamine in an amount of 400 grams or more.

A.  Standards of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).








In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) when the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment and, weighing all of the evidence, the contrary evidence is so strong
that guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id. 
      In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Applicable Facts








At trial, Benner testified
that he and appellant were making methamphetamine, that both he and appellant
bought the chemicals used in making the drug, and that appellant was going to
use the drug.  He stated that they were
about three-fourths of the way through the process of making the
methamphetamine when the sheriff=s car pulled up behind them. 
Benner stated that the methamphetamine, which was in a liquid form, was
in a clear glass container that was approximately eight inches tall and four or
five inches in diameter.  He testified
that the glass was filled with liquid methamphetamine to within about two
inches from the top.  Benner stated that
during the police chase, he poured the liquid methamphetamine into a bleach
bottle[2]
in an effort to destroy the evidence.  He
testified that the bleach was not used as part of the manufacturing
process.  He said that if the
methamphetamine had Apowdered
out,@ it would have yielded seven to ten grams of methamphetamine.

Michelle O=Neal, a senior forensic chemist with the Tarrant County Medical
Examiner=s Office, testified that she received three bottles containing a
liquid from the Wichita Falls Police Department (WFPD), and tested the liquid.
She stated that the liquid was in two layers when she received it, but that the
WFPD only asked her to identify the top layer of liquid.  O=Neal weighed the contents of the bleach bottle and recorded that it
weighed 2,375.8 grams.  She also took a
sample of the top layer of liquid and documented that it contained
methamphetamine.  O=Neal never attempted to identify the liquid on the bottom layer.








O=Neal testified that she took the dimensions of the glass container
described by Benner and calculated that it would yield 1,234.6 grams of liquid
methamphetamine if it was suspended in water and was six inches tall and four
inches in diameter.  Additionally, O=Neal stated that the liquid is no longer in two phases because the top
layer, the methamphetamine, evaporated quickly and that only the bottom layer
remains.[3]


Max Courtney, a laboratory
director and owner of Forensic Consultant Service in Fort Worth, testified for
the defense that he obtained a sample of the bleach container on August 19,
2004.  He stated he went to the Wichita
County District Attorney=s Office and
examined three bottles of liquid and took a combined sample of 383 grams.  Courtney said that he was under the belief
that all three samples were from the same container.  He testified that he performed three
different tests on the samples and identified the liquid in them as
bleach.  The liquid was only in one phase
when Courtney received it because the liquid methamphetamine had evaporated
before Courtney tested the bleach bottle contents.  He further stated that he did not find any
controlled substances, but did find two products, namely acetylated
methamphetamine and N-formylmethamphetamine, in trace quantities that were
consistent with oxidation products of methamphetamine.








Courtney said that it is
possible for liquid methamphetamine to oxidate within eighteen months if it was
suspended in bleach, as happened in this case. He opined that if liquid
methamphetamine was poured into bleach, there would be some oxidation and
degradation of the methamphetamine. 
Courtney testified that the two liquids would not mix well together and
that they would most likely be seen as two phases of liquid.

He estimated that the total
amount of liquid methamphetamine that was poured into the bleach container was
146 grams.  He stated that he arrived at
that estimation because O=Neal
recorded that there was 250 milliliters in the top layer.  He further stated that of those 146 grams,
most of the liquid would be mineral spirits and although mineral spirits are
used in the processing of methamphetamine, he did not consider them an
adulterant or dilutant.[4]  Additionally, Courtney testified that he did
not consider liquid methamphetamine to be methamphetamine because most of it is
a solvent and the solvent is not used to increase the bulk of the product.  He also stated that bleach is not an
adulterant or dilutant because it is a different layer than the controlled
substance.








Appellant testified that on
January 23, she and Benner were going to Electra, Texas to do Benner=s laundry and to check on her lake house.  She conceded that she was driving the
car.  Appellant stated that she stopped
the car on the corner of Bonner Road and Gentry because she and Benner began
arguing, Benner Aaggressively
grabbed@ her shirt, and she was attempting to calm him down. 

Appellant said that when she
saw the sheriff=s car, she
continued driving because she had been a victim of police abuse and she was
still traumatized by the abuse.[5]  She stated that she was driving to a more
populated area before she pulled over. 
During the chase, appellant stated Benner was throwing items out of the
window, but that she did not throw anything out of her window.  She stated that she told Benner to stop
throwing things because A[the police]
are going to think the worst.@  Appellant testified that she
did not know why Benner was throwing things out of the window and denied buying
any of the discarded items.  Appellant
could not remember smelling a chemical odor in the car or if the car filled up
with smoke during the chase.  She
testified that she did not know that Benner had methamphetamine with him and
she did not see the items used in making the drugs in the car.  Appellant denied participating in the
manufacturing of methamphetamine and denied that the methamphetamine was for
her personal use.








C.  Applicable Law

To convict a defendant for
possession of a controlled substance, the State must show that the defendant
knowingly or intentionally possessed the controlled substance.  Seals v. State, No. PD-0678-04, 2005
WL 3058041, at *2 (Tex. Crim. App. Nov. 16, 2005).  A controlled substance is defined as Aa substance, including a drug, an adulterant, and a dilutant, listed
in Schedule I through V or Penalty Groups 1, 1-A, or 2 through 4.@  Id. (citing Tex. Health &  Safety Code Ann. ' 481.002(5) (Vernon Supp. 2005)); see also Chapman v. United States,
500 U.S. 453, 460, 111 S. Ct. 1919, 1925 (1991).  A controlled substance includes the aggregate
weight of any mixture, solution, or other substance containing a controlled
substance.  Seals, 2005 WL
3058041, at *2; see also Chapman, 500 U.S. at 460, 111 S. Ct. at
1925. 

Section 481.002(49) of the
Texas Health and Safety Code defines adulterant or dilutant as Aany material that increases the bulk or quantity of a controlled
substance, regardless of its effect on the chemical activity of the controlled
substance.@  Tex.
Health & Safety Code Ann. ' 481.002(49).

D.  Analysis








The court of criminal appeals
has recently addressed what substances are included in the definition of
adulterant or dilutant.  See Seals,
2005 WL 3058041, at *2-3.  In Seals,
the defendant was found guilty of possession of methamphetamine in an amount
more than one gram but less than four grams. Id. at *1.  On appeal, the defendant contended that the
blood waste found in a vial was not an adulterant or dilutant and therefore
should not have been included in the weight of the controlled substance.[6]  Id.  The Dallas Court of Appeals reversed the
defendant=s conviction
and held as a matter of logic that not every substance can be an adulterant or
dilutant, and the State sought discretionary review.  Id. 









The court of criminal appeals
examined section 481.002(49) of the health and safety code and compared it to
the court=s prior
holding in Cawthon v. State, 849 S.W.2d 346, 348-49 (Tex. Crim. App.
1992).  Seals, 2005 WL 3058041, at
*4.  In Cawthon, the court of
criminal appeals held that to include an adulterant or dilutant in the
aggregate weight of a controlled substance, the State must prove four elements:
(1) the identity of the named illegal substance, (2) that the added remainder
(adulterants or dilutants) has not affected the chemical activity of the named
illegal substance, (3) that the remainder (adulterants or dilutants) was added
to the named illegal substance with the intent to increase the bulk or quantity
of the final product, and (4) the weight of the illegal substance, including
any adulterants or dilutants.  Cawthon,
849 S.W.2d at 348-49. 

In Seals, the court of
criminal appeals noted that when the legislature added the definitions of
adulterants and dilutants to the health and safety code in 1994, the
legislature left out the requirement that the State must prove an intent to
increase the bulk or quantity of the controlled substance and eliminated the
second element in Cawthon by including, Aregardless of its effect on the chemical activity.@  Seals, 2005 WL 3058041,
at *3.  The court stated that A[t]he literal meaning of the legislature=s adulterant and dilutant definition is that any substance that is
added to or mixed with a controlled substance, regardless of when, how, or
why that substance was added, may be added to the aggregate weight of the
controlled substance as an adulterant.@[7]  Id. at *2 (emphasis
added).  








The court observed that under
the rules of statutory construction, we must presume Athat the legislature meant what it said@ even if applying the literal meaning of the statute produces absurd
results, results that the legislature must have intended.  Id. 
The court noted that A[i]t may lead to instances, similar to [the defendant=s], where the weight of a substance that is not intentionally added to
increase the bulk or quantity of a controlled substance is nevertheless used to
increase a defendant=s penalty.@[8]  Id.  Thus, the court of criminal appeals concluded
that the revised statute required the blood to be included within the
definition of adulterant or dilutant.  Id.  at *4.













Here, Benner testified that
he poured the liquid methamphetamine in to the bleach bottle.  Additionally, O=Neal stated that she weighed the contents of the bleach bottle and
that it contained 2,375.8 grams.  She
also stated that she tested the top layer of the liquid and that it contained
methamphetamine.  According to the
holding in Seals, we must include the weight of an adulterant or
dilutant_i.e., the bleach_to the aggregate weight of the controlled substance regardless of
whether the bleach was used or intended to increase the bulk of the controlled
substance.[9]
 Seals, 2005 WL 3058041, at
*2.  There was no direct evidence
presented at trial regarding whether the liquid methamphetamine and bleach ever
mixed; however, there was direct testimony that one of the liquids was poured
directly into the same container holding the other liquid.  It can be reasonably inferred that the two
liquids mixed when the liquid methamphetamine was initially poured into the
bleach. The trier of fact may make reasonable inferences regarding the
evidence.  See Tucker v. State,
183 S.W.3d 501, 509 (Tex. App.CFort Worth 2005, no pet.) (stating that the trier of fact can draw
reasonable inferences from basic facts to ultimate facts); King v. State, 174
S.W.3d 796, 802 (Tex. App._Corpus Christi 2005, pet. ref=d) (holding jury=s
responsibilities include drawing reasonable inferences from basic facts).  The fact that the two liquids had separated
at the time of trial is irrelevant.[10]  Additionally, O=Neal=s
calculation that the bleach bottle contained 2,375.8 grams of liquid is clearly
above 400 grams and therefore is legally and factually sufficient to support
the jury=s finding that appellant possessed 400 grams or more of
methamphetamine. Although we can think of instances in which the statutory
construction set out in Seals might lead to an absurd result, such as
when a small amount of a controlled substance is poured into a large amount of
substance for reasons other than manufacturing and the defendant is charged for
the combined weight, we agree with the court of criminal appeals that it is not
our place within the judiciary to construe a statute based on our notions of
logic or what makes common sense.[11]  Id. at *4. 








Additionally, appellant
argues that there is no evidence in the record that she intended to deliver any
methamphetamine.  Intent to deliver can
be proven by circumstantial evidence.  See
Jordan v. State, 139 S.W.3d 723, 726 (Tex. App._Fort
Worth 2004, no pet.); Rhodes v. State, 913 S.W.2d 242, 251 (Tex. App._Fort
Worth 1995), aff'd, 945 S.W.2d 115 (Tex. Crim. App.), cert. denied,
522 U.S. 894 (1997); Williams v. State, 902 S.W.2d 505, 507 (Tex. App._Houston
[1st Dist.] 1994, pet. ref'd); Reece v. State, 878 S.W.2d 320, 325 (Tex.
App._Houston [1st Dist.] 1994, no pet.). 
Courts have considered several factors in determining intent,
including:  (1) the nature of the
location where the defendant was arrested; (2) the quantity of drugs the
defendant possessed; (3) the manner of packaging of the drugs; (4) the presence
or absence of drug paraphernalia (for use or sale); (5) whether the defendant
possessed a large amount of cash in addition to the drugs; and (6) the
defendant's status as a drug user. Jordan, 139 S.W.3d at 727;
Williams, 902 S.W.2d at 507; Reece, 878 S.W.2d at 325.  Expert testimony may be introduced to prove
intent to deliver.  See Bryant v.
State, 997 S.W.2d 673, 675 (Tex. App._Texarkana
1999, no pet.); Rhodes, 913 S.W.2d at 251; Mack v. State, 859
S.W.2d 526, 529 (Tex. App._Houston [1st Dist.] 1993, no pet.); Branch v. State, 833 S.W.2d
242, 244‑45 (Tex. App._Dallas 1992, pet. ref'd).








Here, appellant was arrested
in a rural area outside of Burkburnett, Texas on a county road.  Appellant conceded that she was the driver of
the car.  During the police chase, Benner
testified that he threw items out of the window and that he was attempting to
get rid of the evidence.  After appellant
and Benner had been arrested, the officers went back to find the items that
were discarded and determined that these items, such as coffee filters, plastic
containers, and a gassing generator, are typically used in the manufacture of
methamphetamine.  Appellant did not
possess any paraphernalia indicating an intent to use the drug.  Benner testified that if the liquid
methamphetamine had Apowdered out@ it would have yielded seven to ten grams of methamphetamine. Officer
Daniel Zimpel, a Wichita Falls police officer, testified that a Acook@ of seven to
ten grams is a fairly small amount, but that it could be Acut@ to
approximately eighteen grams and sold. 
Bobby Dilbeck, a Wichita Falls police officer, testified that the
typical amount of methamphetamine could be between one fifth and one quarter of
methamphetamine.  Therefore, the eighteen
grams could provide as many as ninety grams of methamphetamine.  Dilbeck further testified that when he
arrived at the scene, he found salt where the car was reported to have been
parked, as well as other items that are associated with a methamphetamine
lab.  Additionally, appellant and Benner
were both unemployed at the time of the offense.  Thus, an inference can be drawn that the
methamphetamine being manufactured was not for personal use.  








We hold that the evidence,
when viewed in the light most favorable to the verdict, supports a
determination beyond a reasonable doubt that appellant intended to deliver the
methamphetamine.  Therefore, we overrule
appellant=s second
point.  Additionally, when viewed
neutrally, the evidence is not so obviously weak or so greatly outweighed by
contrary proof that it would not support the finding of guilty beyond a
reasonable doubt.  We overrule appellant=s third point. 

IV.  Accomplice Witness Instruction

In appellant=s first point, she contends that the trial court erred by failing to
include an accomplice witness instruction in the guilt-innocence charge because
Benner was an accomplice as a matter of law. 
Appellant argues that without Benner=s testimony, the State could not prove the quantity of the
methamphetamine and that the error was egregious and reversible.  Appellant concedes that she did not request
an accomplice witness instruction at trial.

A.  Error Analysis

Article 38.14 of the code of
criminal of procedure provides that A[a] conviction cannot be had upon the testimony of an accomplice
unless corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense.@  Tex. Code Crim. Proc. Ann art. 38.14 (Vernon 2005).  








In reviewing a trial court=s failure to instruct the jury on the accomplice witness rule, we
examine the record for evidence corroborating the accomplice witness
testimony.  Hall v. State, 161
S.W.3d 142, 149 (Tex. App._Texarkana 2005, pet. ref=d).  If the evidence clearly
warrants conviction independent of the accomplice testimony, the trial court=s failure to instruct on the law of accomplice testimony is not
reversible error.  Solis v. State,
792 S.W.2d 95, 98 (Tex. Crim. App. 1990); Hall, 161 S.W.3d at 149.  

A person may not be convicted
on the testimony of an accomplice unless there is other evidence tending to
connect the defendant with the crime.  Tex. Code Crim. Proc. Ann. art. 38.14; Hall,
161 S.W.3d at 149.  The test is
whether, after excluding the accomplice=s testimony, there is other evidence of an incriminating character
which tends to connect the defendant with the commission of the offense.  Burks v. State, 876 S.W.2d 877,
887 (Tex. Crim. App. 1994); Munoz v. State, 853 S.W.2d 558, 559 (Tex.
Crim. App. 1993); Hall, 161 S.W.3d at 149.








The State concedes that Benner was an accomplice witness as a matter
of law.[12]  When there exists no doubt that a witness is
an accomplice, the trial court is under a duty to so instruct the jury even if
no such instruction is requested.  DeBlanc
v. State, 799 S.W.2d 701, 709 (Tex. Crim. App. 1990), cert. denied,
501 U.S. 1259 (1991). Therefore, we conclude that the trial court erred by not
including an accomplice witness instruction in the jury charge. 

 

B.  Harm Analysis

Next, we must consider
whether the error was harmful.  See
Herron v. State, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002).  Because appellant did not object to the
omission of the instruction, we must decide whether the error was so egregious
and created such harm that appellant did not have a fair and impartial trialCin short, that Aegregious
harm@ has occurred.  Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g).

1.  Standard of Review








Under the egregious harm
standard, the omission of an accomplice witness instruction is generally
harmless unless the corroborating (non-accomplice) evidence is Aso unconvincing in fact as to render the State=s overall case for conviction clearly and significantly less
persuasive.@  Herron, 86 S.W.3d at 632 (citing Saunders
v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)).  Egregious harm is a difficult standard to
prove and must be determined on a case-by-case basis. Hutch v. State,
922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

2.  Law and Analysis








The court of criminal appeals
has stated that the accomplice witness instruction merely informs the jury that
it cannot use the accomplice witness testimony unless there is also some
non-accomplice evidence connecting the defendant to the offense.  Herron, 86 S.W.3d at 632.  Non-accomplice evidence can render harmless a
failure to submit an accomplice witness instruction by fulfilling the purpose
an accomplice witness instruction is designed to serve.  Id.; Hall, 161 S.W.3d at
149.  An accomplice witness instruction
should be flexible, taking into account the existence and strength of any
non-accomplice testimony and the applicable standard of harm.  Herron, 86 S.W.3d at 632.  To determine the sufficiency of the
corroboration, regardless of whether an objection was made, we eliminate the
testimony of the accomplice witness and examine the testimony of the other
witnesses.  See Taylor v. State, 7
S.W.3d 732, 737 (Tex. App._Houston [14th] Dist. 1999, no pet.).  
In determining the strength of the particular item of non-accomplice
evidence, we must examine (1) its reliability or believability, and (2) the
strength of its tendency to connect the defendant to the crime.  Id.; see also Hall, 161 S.W.3d
at 150.  A harmless error analysis for
the omission of the accomplice witness instruction should also be flexible,
taking into account the existence and the strength of any non-accomplice
evidence and the applicable standard of harm. 
Hall, 161 S.W.3d at 149-50.

a.  Quantity Element








Appellant first complains
that Benner=s testimony
regarding the existence and weight of the methamphetamine is uncorroborated and
that the State could not have proved these facts without Benner=s testimony.  As stated above, the
court of criminal appeals addressed the issue of what substances qualify as an
adulterant or dilutant.  Seals,
2005 WL 3058041, at *2-3.  The court held
that we must consider the weight of any substance, whether or not used in the
manufacturing of the controlled substance, in determining the aggregate weight
of the controlled substance.  Id.
at *4.[13]  O=Neal testified that she performed a test on the bleach bottle and
recorded that it weighed 2,375.8 grams and that it contained
methamphetamine.  Thus, non-accomplice evidence
sufficiently corroborates Benner=s testimony that he poured the liquid methamphetamine into the bleach
bottle, and the trial court=s failure to include an accomplice witness instruction is harmless as
to this evidence.    

b.  Party to the Offense








Appellant further complains
that the jury should have been instructed on accomplice witness law because
Benner provided the only direct evidence that she was a party to the
offense.  Appellant concedes that she was
driving the car when Benner threw the items out the window, but contends that
she was not manufacturing methamphetamine. 
While the accused's mere presence at the scene of the crime is
insufficient, by itself, to corroborate accomplice witness testimony, evidence
of such presence, coupled with other suspicious circumstances, may tend to
connect the accused to the offense.  Trevino
v. State, 991 S.W.2d 849, 851-52 (Tex. Crim. App. 1999); Dowthitt v.
State, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996).  The State argues that even though appellant=s presence at the scene is not enough, there was evidence to connect
her to the manufacturing of methamphetamine. 
The State contends that the fact that appellant was the driver of the
car where the manufacturing was taking place, a chemical odor was emitting from
the car, and the car was positioned so that the passengers could observe
traffic in two directions all connect appellant to the manufacturing of the
drugs.

Deputy Eddy testified that
when he pulled up behind appellant=s car, a white substance was thrown out of the passenger window and
the car sped off.  He also stated that he
could smell a strong chemical odor that is typically associated with
methamphetamine labs.  Deputy Eddy said
that during the chase, Benner began throwing items out the window at random
intervals. Deputy Eddy opined that the driver was fleeing because she was
avoiding detention.  Additionally, Deputy
Goolsby testified that he could also smell a chemical odor and that appellant=s car filled up with smoke during the police chase.

Based on these facts, we hold
that there was sufficient evidence to corroborate appellant=s participation in the crime. 
The statements by Deputies Eddy and Goolsby corroborate the fact that
appellant was at the scene where the methamphetamine was being manufactured,
appellant was the driver of the vehicle, and appellant fled the scene.  For these, reasons we hold that the trial
court=s omission of the accomplice witness instruction was harmless.  We overrule appellant=s first point.













V.  Conclusion

Having overruled appellant=s three points, we affirm the trial court=s judgment.   

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER,
and WALKER, JJ.

WALKER, J. filed a dissenting opinion

PUBLISH

DELIVERED: April 20, 2006











 
 
 
 
 
 
 




 

 

 

 

 

 

                                COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-026-CR

 

 

RHONDA RENEE JONES                                                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 30TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                      DISSENTING
OPINION ON REHEARING

 

                                              ------------

 

I respectfully dissent.  Because no evidence exists in the record that
would permit a jury to rationally find that appellant possessed an amount of
400 or more grams of methamphetamine, I would hold that the State failed to
prove an essential element of the offense. 
I would therefore hold that the evidence is legally insufficient to
support the conviction.  Accordingly, I
would sustain appellant=s second
issue, reverse the trial court=s judgment, and render a judgment of acquittal.








I agree with the majority=s recitation of the law regarding what constitutes an adulterant or
dilutant, but I cannot agree with the majority=s holding that a layer of bleach that is separate and distinct from a
layer of methamphetamine constitutes an adulterant or dilutant.  See Tex.
Health & Safety Code Ann. ' 481.002(49) (Vernon Supp. 2005); Seals v. State, No.
PD-0678-04, 2005 WL 3058041, at *2-4 (Tex. Crim. App. Nov. 16, 2005).  Section 481.002(49) of the health and safety
code defines an adulterant or dilutant as Aany material that increases the bulk or quantity of a
controlled substance, regardless of its effect on the chemical activity of the
controlled substance.@  Tex.
Health & Safety Code Ann. ' 481.002(49) (emphasis added). 
The court of criminal appeals recently interpreted this definition to
mean that Aany
substance that is added or mixed with a controlled substance . . . may be added
to the aggregate weight of the controlled substance as an adulterant or
dilutant.@  Seals, 2005 WL 3058041, at *2.         













Here, the State=s expert, Michelle O=Neal, testified that when she received the liquid for testing, it was
in two distinct layers and that she only tested the top layer, which she
identified as methamphetamine.  She then
weighed the entire contents of the bleach bottle and discovered that it weighed
2,375.8 grams.  The defense expert
testified that he tested only the bottom layer and found that it was bleach.[1]  The
State used O=Neal=s testimony about the total weight of the bleach and liquid
methamphetamine to attempt to establish that appellant possessed 400 or more
grams of methamphetamine.  But the layer
of bleach that lined the bottom of the bleach bottle was separate and distinct
from the layer of liquid methamphetamine; the two did not combine.[2]  Thus,
the bleach was not Aadded to or
mixed with@ the
methamphetamine and did not Aincrease the bulk or quantity@ of the methamphetamine just as a layer of rocks in the bottom of the
bottle would not increase the bulk or quantity of the methamphetamine.  See Tex.
Health & Safety Code Ann. ' 481.002(49); Seals, 2005 WL 3058041, at *2.  Surely, if the bottle had contained rocks
instead of bleach, the majority would not hold that the rocks were adulterants
or dilutants to be included in the total weight of the methamphetamine.[3]  

I would hold that the State
failed to put forth any evidence that the weight of the top layerCthat which contained the methamphetamineCwas 400 grams or greater. 
Therefore, I would hold that the evidence is legally insufficient to
prove that Appellant possessed 400 or more grams of methamphetamine.  For the reasons set forth above, I dissent. 

 

 

 

SUE WALKER

JUSTICE

 

 

PUBLISH

 

DELIVERED:
April 20, 2006

 











[1]Benner
was sentenced to three years in the Institutional Division of the Texas
Department of Criminal Justice (TDCJ) for his role in this case.





[2]At
trial, Benner identified the contents of the bottle as bleach.  However, the State provided no expert
testimony on the bottle=s
contents.





[3]The
State did not introduce any of the methamphetamine at trial because it had
evaporated.  





[4]Courtney
did not record the aggregate weight of the liquid.  





[5]Appellant
testified that she was physically abused by police officers in Burkburnett,
Texas and Electra, Texas on two separate occasions and that she settled in both
cases.





[6]At
his trial, the defendant stated that Athe vial was used to squirt
blood and trace amounts of methamphetamine when he was unable to successfully
inject the drug into his arm.@ Id.  





[7]The
dissent states that the bleach was not added to the methamphetamine.  See Diss. Op. at 3.  However, Benner testified that he poured the liquid
methamphetamine into the bleach bottle, both obviously in a liquid state at the
time they were mixed.  





[8]The
dissent analogizes the pouring of liquid methamphetamine into bleach with the
pouring of liquid methamphetamine into a bottle of rocks.  The dissent ignores the fact that the bleach
was in a liquid state at the time it was originally mixed with the liquid
methamphetamine.  See Diss. Op. at
3.  However, we are in no way saying that
a mixture of a solid and a liquid is the same thing as a mixture of two
liquids.  





[9]Appellant
relies on our decision in Brumit v. State, as support for her position
that there is not sufficient proof to establish the quantity of methamphetamine
produced.  42 S.W.3d 201, 204 (Tex. App._Fort Worth 2001, pet.
ref=d).  In Brumit, we held that the State
cannot prove the quantity of a controlled substance by giving an expert witness
the dimensions of a container in which the controlled substance was
located.  Id. at 203-04.  However, the Seals decision holds that
we are to consider the combined weight of the adulterant or dilutant and the
controlled substance in determining the aggregate weight.  Seals, 2005 WL 3058041, at *2.  Because the State included the weight of the
bleach and the weight of the liquid methamphetamine in calculating the
aggregate weight, our decision in Brumit is not controlling. 





[10]The
dissent focuses its argument on Courtney=s testimony that the bleach
and methamphetamine would not Amix well.@  However, Courtney did not testify that the
two liquids did not mix. 
Additionally, O=Neal
did not testify when the methamphetamine would Afloat@ on
the bleach.  





[11]The
dissent seems to base its reasoning on the fact that the bleach and
methamphetamine ultimately separated into two distinct layers at some point
after the methamphetamine was mixed with the bleach.  The dissent concludes that the Atwo
did not combine;@
however, there is no evidence stating they never combined.  Thus, we cannot determine from the record
when the methamphetamine and bleach actually separated.  Because the statute is unambiguous, we cannot
say that the legislature intended different results when the person pours a
controlled substance into a liquid and the two products combine and when the
person pours a controlled substance into a liquid and the two products
separate.  It is not this court=s
place to construe this statute to our own personal ideas of what seems
logical.  





[12]In
order to be an accomplice as a matter of law, the person must be susceptible to
prosecution for the offense with which the accused is charged or a lesser
included offense.  See Medina v. State,
7 S.W.3d 633, 641 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102
(2000); McFarland v. State, 928 S.W.2d 482, 514 (Tex. Crim. App. 1996); Ex
parte Zepeda, 819 S.W.2d 874, 876 (Tex. Crim. App. 1991); Kunkle v.
State, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986), cert. denied, 492
U.S. 925 (1989).  A co‑indictee for
the same offense is an accomplice as a matter of law.  Burns v. State, 703 S.W.2d 649, 651
(Tex. Crim. App. 1985).  This includes a
witness who is indicted for the same offense, but is promised immunity if he
testifies against the accused.  Blake
v. State, 971 S.W.2d 451, 462 (Tex. Crim. App. 1998) (Mansfield, J.,
dissenting) (citing Stiles v. State, 89 Tex. Crim. 603, 232 S.W. 805 (1921)).





[13]Appellant
contends that the weight of the bleach cannot be included in the aggregate
weight of the methamphetamine.  However,
in Seals, the court of criminal appeals did not hold that the adulterant
or dilutant and the controlled substance had to mix.  Therefore, we decline to hold that when a
controlled substance is mixed with an adulterant or dilutant and they form two
distinct phases, the adulterant or dilutant is not included in the aggregate
weight.  





[1]The defense expert did
not test the top layer because it had already evaporated at the time that he
tested the substance.  Using the
calculation given to him by O=NealCalthough
O=Neal
did not testify to the weight or volume of the top layer at trialCthat
there was 250 milliliters of the top layer, the defense expert calculated the
total amount of liquid methamphetamine in the container to be less than 146
grams. 





[2]Contrary to the
majority=s
position, the jury could not infer from the fact that the methamphetamine was
poured into the bleach that the two liquids Amixed.@  The direct evidence from both the State=s
expert and the defense expert was to the contrary.  O=Neal testified that she did
not know the underlying substance was bleach, but said that because
methamphetamine had a lower pH than the substance constituting the bottom layer
(which we know was bleach) the methamphetamine would Afloat@ on
top of the bottom liquid.  Max Courtney,
the defense expert, testified that when liquid methamphetamine is poured into
bleach A[t]he
two substances are not going to mix well, so it=s
like gasoline and water.@  Two substances that do not combine to form a
single substance, but instead retain their separate character in two distinct
layers cannot be inferred to have Amixed.@





[3]The majority relies on
the court of criminal appeals recent holding in Seals that blood found
in a vial mixed with methamphetamine could be considered an adulterant or
dilutant, but I would distinguish Seals because the blood and
methamphetamine in that case were intermixed with each other, unlike in the
present case.  See Seals, 2005 WL
3058041, at *4.















 [JH1]

Majority by Justice
Livingston; Dissent by Justice Walker