In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00136-CV
______________________________


Â 
IN THE INTEREST OF M.A., A JUVENILE
Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 3534


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

Â Â Â Â Â Â Â Â Â Â M.A., a twelve-year-old juvenile, appeals from the modification and disposition
orders rendered by the County Court at Law of Harrison County. In its modification order,
the trial court determined that M.A. violated the terms of his probation by engaging in
delinquent conduct, to-wit, criminal mischief. Before the modification, M.A. had been
adjudicated for three other misdemeanor offenses. The conduct forming the basis of the
second adjudication occurred after the date of the first adjudication. In its disposition order,
the trial court committed M.A. to the Texas Youth Commission (T.Y.C.) for an
indeterminate period of time, not to exceed the time when M.A. will be twenty-one years
of age. M.A.'s sole issue on appeal is that the trial court abused its discretion in committing
him to T.Y.C.
Background
Â Â Â Â Â Â Â Â Â Â M.A.'s initial contact with Harrison County juvenile authorities occurred on or about
MarchÂ 5, 2004. He was detained at that time for disrupting class by throwing chairs and
threatening the responding officer. Before the adjudication hearing based on those
incidents, M.A. was provided an opportunity to complete a boot camp program, which he
did successfully. The trial court originally placed M.A. on six months deferred prosecution,
which M.A. failed to successfully complete. Eventually, the trial court adjudicated M.A. of
committing interruption of a public meeting, a misdemeanor, and placed M.A. on formal
probation.
Â Â Â Â Â Â Â Â Â Â On or about April 26, 2005, M.A. was detained for violent disruption of class and
resisting transport by the officer responding. The trial court adjudicated M.A. of committing
delinquent conduct, to-wit, interruption of a public meeting and resisting arrest. M.A. was
placed on probation with more stringent rules. 
Â Â Â Â Â Â Â Â Â Â On or about August 24, 2005, M.A. again disrupted his class at school. After having
attempted to defuse the situation by verbally admonishing M.A. and isolating him from the
other students in his behavior modification class, Kevin Gray, M.A.'s teacher, sent M.A. to
the assistant principal's office for failing to follow instructions. When M.A. did not
cooperate with the assistant principal, the assistant principal informed M.A. she would be
calling his juvenile probation officer. Although M.A. had not exhibited any physical violence
up to this point, M.A. became extremely upset on learning his juvenile probation officer
would be informed. M.A. became violent and "stormed out" of the office. On his way out
of the school, M.A. slammed a wooden door with such violence that it cracked. After
damaging the door, M.A. hit a glass display case with his hand causing a glass panel to
break. The principal testified the combined cost of the repairs were estimated to be at
least $675.00.
The Trial Court Did Not Abuse Its Discretion
Â Â Â Â Â Â Â Â Â Â M.A. contends the trial court abused its discretion because commitment to T.Y.C.
should be limited to the most severe offenders. M.A. cites Justice Schneider's concurring
opinion in In re J.P., for the proposition that T.Y.C. is the "most severe form of incarceration
contemplated in the juvenile justice scheme" and "the Legislature has expressed its intent
that the commitment be reserved for only serious juvenile offenders." In re J.P., 136
S.W.3d 629, 634 (Tex. 2004) (Schneider, J., concurring). M.A. also argues that a proper
commitment to T.Y.C. generally occurs when the delinquent child involved has engaged
in some type of violent activity, making such child potentially dangerous to the public, or
where the child has been given a negative recommendation for probation. See In re L.G.,
728 S.W.2d 939, 945 (Tex. App.âAustin 1987, writ. ref'd n.r.e.). In addition, M.A.
contends the ruling was arbitrary and unreasonable because the trial court failed to
exhaust local services designed to address the medical needs of M.A. 
Â Â Â Â Â Â Â Â Â Â Provided the requisite number of adjudications have occurred,


 the decision to
modify a juvenile's probation, including the decision to commit the child to T.Y.C., is in the
sound discretion of the trial court and can be reversed only on a finding that the trial court
abused that discretion. J.P., 136 S.W.3d at 632â23;


 In re H.G., 993 S.W.2d 211, 213
(Tex. App.âSan Antonio 1999, no pet.). A trial court abuses its discretion when it acts
arbitrarily or unreasonably, or without reference to guiding rules or principles. In re C.J.H.,
79 S.W.3d 698, 702 (Tex. App.âFort Worth 2002, no pet.). 
Â Â Â Â Â Â Â Â Â Â According to M.A., the trial court abused its discretion because M.A. is not one of
the most serious offenders and did not exhibit violence towards any other person. M.A.
directs our attention to Gray's testimony that the original encounter was not of a physical
nature, but was based on M.A.'s refusal to comply with several requests. After M.A. met
with the assistant principal and was informed that his probation office would be called,
M.A.'s demeanor changed, at which point he "stormed out" of the school causing damage
to school property. At no point did M.A. attempt to cause harm to any individual. Gray also
testified M.A. was "pretty laid back, pretty good guy most of the time." 
Â Â Â Â Â Â Â Â Â Â The Texas Family Code permits a trial court to decline third and fourth chances to
a juvenile who has abused a second chance. J.P., 136 S.W.3d at 633. Further, the State
did introduce evidence of M.A. behaving in a violent manner toward others. M.A. had
previously been adjudicated of resisting arrest. Although interruption of a public meeting
is not necessarily violent in nature, M.A. was adjudicated of disrupting a meeting by
throwing chairs and threatening the responding officer. In addition, M.A. had a history of
violent and extremely disruptive behavior at the Willoughby Juvenile Center. The State
introduced approximately eighteen incident reports, filed by detention employees while
M.A. was in detention, detailing several acts of violence towards other residents and staff,
as well as several violent threats. The trial court did not act arbitrarily or without reference
to guiding principles.
Â Â Â Â Â Â Â Â Â Â According to M.A., the trial court also abused its discretion by failing to exhaust
alternatives to T.Y.C. The trial court found "[t]here is nothing else we have available on a
local basis that will help him." Darren Forehand, M.A.'s probation officer, testified Harrison
County Juvenile Services had no further programs available to attempt the rehabilitation
of M.A. M.A. introduced evidence during the hearing that he has been diagnosed with
"ADHD."


 M.A.'s father and mother both testified that M.A.'s mother had recently changed
employers, which had created problems obtaining M.A.'s medication. M.A. was not on his
medication when he committed the criminal mischief. M.A.'s parents attributed M.A.'s most
recent behavior to the lack of medication. In addition, Gray testified he assumed M.A. was
not on his medication when he misbehaved. However, M.A.'s mother admitted M.A. was
taking his medication when he committed the previously adjudicated misdemeanors. 
Forehand testified he did not believe M.A.'s behavior was any different when he was on
his medication. 
Â Â Â Â Â Â Â Â Â Â There was no evidence introduced at the hearing that Harrison County has
alternative facilities which would meet M.A.'s needs.


 M.A. argues on appeal that the trial
court should have attempted to see how M.A. would behave in the Harrison County
Juvenile Services' Long Term Program. The record does not indicate what services are
available in the Harrison County Long-Term Services' Program, but the record does
indicate the trial court was aware of the program. According to Forehand, the rehabilitative
and counseling services at T.Y.C. are considerably more extensive than those available
at Willoughby Juvenile Center. Forehand testified M.A.'s behavior in detention indicates
that placement of M.A. in the long-term program would be very disrupting to the other
resident members of the long-term program. M.A. had already attended boot camp ("the
STAR program") and had exhausted other services available locally. Forehand testified
there were not any additional services available locally to attempt to rehabilitate M.A. We
cannot say the trial court abused its discretion in determining Harrison County lacked the
services M.A. needs.
Conclusion
Â Â Â Â Â Â Â Â Â Â We are unable to conclude the trial court acted arbitrarily or without reference to
guiding principles. The trial court was presented with evidence that M.A. had previously
been adjudicated of committing three misdemeanors, including resisting arrest; had
exhibited acts of violence towards other residents at the detention center as well as the
staff of the detention center; and had exhausted all services available locally. The trial
court did not abuse its discretion in committing M.A. to T.Y.C. 
Â Â Â Â Â Â Â Â Â Â Accordingly, we affirm the modification and disposition orders of the trial court.




Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â April 17, 2006
Date Decided:Â Â Â Â Â Â Â Â Â July 19, 2006



tyle-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-131-CR%20Black%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00131-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ROYLAND EARL BLACK,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 7th Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Smith County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. 007-1631-09

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Chief Justice Morriss








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  One could
say that Royland Earl Black was essentially asleep at the wheel when Officer
Letitia Powell encountered his driving in Smith County[1]
in early 2009.Â  In a trial to the court,
Black was found guilty of driving while intoxicated (DWI), his sentence was
enhanced to the equivalent of a third degree felony, and Black was sentenced to
six yearsÂ confinement.Â  We affirm the
trial courtÂs judgment, because (1) Black has not demonstrated that his trial
counsel was ineffective, and (2) Black cannot prevail on his claim that the
trial court failed to consider the full range of punishment.

Â Â Â Â Â Â Â Â Â Â Â  Powell was
patrolling the streets on or about January 30, 2009, when a radio broadcast
informed her of a possible intoxicated driver at a local intersection.Â  Responding to the call, Powell spotted a
white truck driven by Black Âfailing to maintain a single lane.ÂÂ  She pulled up behind the truck at a red light
and engaged her patrol car lights.Â 
Although the light had turned green, the truck remained stopped in the
middle of the street.Â  After Powell used
her unitÂs loudspeaker to ask Black to Âpull off the main roadway,Â Black drove
through the green light and continued to drive down the road without
stopping.Â  He led Powell on a two-mile
low-speed chase even though the patrol carÂs Âtake-downs, which is a brighter
white light,Â siren, and horn were used.Â 
Black finally pulled over into a ChurchÂs Chicken parking lot.Â  

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Upon initial
contact, Black was, according to Powell, Âextremely slow to respondÂ to
commands, was Âunsteady,Â Âswayed,Â and Âneeded assistanceÂ when exiting the
vehicle.Â  After Black exhibited
difficulty in following instructions during administration of the horizontal
gaze nystagmus (HGN)[2]
test, failed to understand and maintain balance during the walk-and-turn test,
and performed unsatisfactorily on the one-leg-stand test, Powell concluded that
Black was intoxicated.Â  Before the tests
were administered, Black denied having any medical issues, but later informed
Powell he had diabetes and a bad back, and admitted to ingesting Âa Vicodin.ÂÂ  Assisting Powell, Officer Donald Shafer
recovered five ÂSomaÂ prescription drug pills from a search of BlackÂs truck.[3]Â  

Â Â Â Â Â Â Â Â Â Â Â  Black was
arrested and agreed to provide a blood sample to nurse Shirley Dudley.Â  Eduardo Padilla of the Texas Department of
Public Safety Crime Laboratory testified that the initial drug screen of BlackÂs
blood sample revealed the presence of prescription drugs Hydrocodone,
Meprobamate, and Carisoprodol (Soma).Â 
The drugs were legally prescribed to Black.Â  

Â Â Â Â Â Â Â Â Â Â Â  In
a statement given after his arrest and during trial, Black said he had Âblacked
outÂ while driving.Â  BlackÂs brother, who
was a passenger in the truck, told Shafer Âhe was scared; that [Black] wouldnÂt
stop, and that he had to physically grab control of the steering wheel and make
the vehicle turn into the . . . ChurchÂs Chicken parking lot.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  Padilla
testified that the two drugs found in BlackÂs system could cause Âdrowsiness,
dizziness, slurred speech, blurred vision, [and] lack of motor skills.ÂÂ  He also informed that the combination of the
drugs could cause loss of the normal use of mental or physical faculties, and
the amount of Hydrocodone in the blood sample was Âon the high side.ÂÂ  Black took the stand and admitted during
cross-examination that he had previously been convicted of DWI in 2007 for
driving after ingesting his regular medication. 

Â (1)Â Â Â Â Â  Black
Has Not Demonstrated that His Trial Counsel Was Ineffective

Â 

Â Â Â Â Â Â Â Â Â Â Â  We begin our
analysis with the rule that any allegation of ineffectiveness of counsel must
be firmly founded in the record. Â Goodspeed v. State, 187 S.W.3d 390, 392
(Tex. Crim. App. 2005); Thompson v. State,
9 S.W.3d 808, 813 (Tex. Crim. App. 1999); Wallace
v. State, 75 S.W.3d 576, 589 (Tex. App.ÂTexarkana 2002), affÂd, 106 S.W.3d 103 (Tex. Crim. App. 2003).
Â From the record received by this Court, Black
bears the burden of proving that counsel was ineffective by a preponderance of
the evidence. Â Goodspeed, 187 S.W.3d at 392; Thompson,
9 S.W.3d at 813; Cannon v. State, 668
S.W.2d 401, 403 (Tex. Crim. App. 1984).

Â Â Â Â Â Â Â Â Â Â Â  We
apply the two-pronged Strickland test
handed down by the United States Supreme Court to determine whether Black received
ineffective assistance of counsel. Â Strickland v. Washington, 466 U.S. 668 (1984).
Â Failure to satisfy either prong of the Strickland test is fatal. Â Ex parte
Martinez, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006). Â Thus, we need not examine both Strickland prongs if one cannot be met. Â Strickland,
466 U.S. at 697.

Â Â Â Â Â Â Â Â Â Â Â  First, Black
must show that counselÂs performance fell below an objective standard of
reasonableness in light of prevailing professional norms. Â Id.
at 687Â88. Â There is a strong presumption
that counselÂs conduct fell within the wide range of reasonable professional
assistance and that the challenged action could be considered sound trial
strategy. Â Id. at 689; Ex parte White,
160 S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong
v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Â Therefore, we will not second-guess the
strategy of BlackÂs counsel at trial through hindsight. Â Blott v.
State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Hall v. State, 161 S.W.3d 142, 152 (Tex. App.ÂTexarkana 2005, pet.
refÂd).

Â Â Â Â Â Â Â Â Â Â Â  The second Strickland prong, prejudice, requires a
showing that, but for counselÂs unprofessional error, there is a reasonable
probability that the result of the proceeding would have been different. Â Strickland,
466 U.S. at 687Â88.

Â Â Â Â Â Â Â Â Â Â Â  A. Â Â Â Â Â Â  The Guilty Plea Before Receipt of the
Toxicology Report

Â 

Â Â Â Â Â Â Â Â Â Â Â  Black argues that counsel
persuaded him to plead guilty before receiving the toxicology report.Â  CounselÂs advice came after consultation with
Black.Â  It is possible statements or
admissions may have been made to counsel during such consultation.Â  BlackÂs counsel told the court he advised his
client to plead guilty because Â[t]here were certain pressures to deal with,
Your Honor, timewise and negotiation-wise.ÂÂ 
The record indicates counsel may have advised Black to enter a plea of
guilty in an effort to resolve the case in a favorable manner.Â  Often, defense counsel have various
reasonable paths to take in defending their clients; choosing one is part of
trial strategy and will not be held ineffective unless no reasonable attorney
would choose that path.Â  See Harrington v. Richter, No. 09-587,
2011 WL 148587, at *14Â16 (U.S. Jan. 19, 2011) (choice not to use particular
expert for scientific analysis of blood).Â 
We decline to second-guess the strategy of BlackÂs counsel through
hindsight. 

Â Â Â Â Â Â Â Â Â Â Â  Undermining
the harm prong of the Strickland test,
the guilty plea was withdrawn.Â  Black
argues Âthe damage was doneÂ because the court was Âleft with the indelible
impression that Appellant was guilty before any evidence was presented at the
bench trial.ÂÂ  No authority or citation
to the record is cited to support BlackÂs proposition, and the idea that the
plea left the Âindelible impressionÂ of BlackÂs guilt, or that the court
otherwise considered the withdrawn plea, is speculation.

Â Â Â Â Â Â Â Â Â Â Â  In any
event, the toxicology report indicated the presence of a high amount of
Hydrocodone in addition to two other prescription drugs, facts that do not aid
BlackÂs defense.Â  Combined with the video
supporting the finding of intoxication, we conclude Black fails to meet the
second prong of Strickland requiring
a showing that the result of the proceeding would have been different had he
never entered a guilty plea.Â  No
ineffective assistance of counsel is shown relative to the guilty plea.

Â Â Â Â Â Â Â Â Â Â Â  B. Â Â Â Â Â Â  Counsel
Attempts to Testify About His Own Experiences with Blackouts

Â 

Â Â Â Â Â Â Â Â Â Â Â  BlackÂs
counsel took the stand and began testifying about an experience he had with a
blackout while in court.Â  The StateÂs
objection to the relevance of counselÂs testimony was sustained, and the
testimony was struck.Â  Yet, Black argues,
without support in the form of caselaw or record citation, that his counselÂs
testimony Âtainted AppellantÂs defense and doubtless caused the trial court to
question counselÂs defense strategy.Â Â 

Â Â Â Â Â Â Â Â Â Â Â  We find that
Black has failed to rebut the strong presumption that counselÂs conduct fell
within the wide range of reasonable professional assistance and that the
challenged action could be considered sound trial strategy. Â Black was intoxicated if he did Ânot have the
normal use of mental or physical faculties by reason of the introduction of . .
. a drug, . . . or any other substance into [his] body.ÂÂ  Tex.
Penal Code Ann. Â§ 49.01(2)(A) (Vernon 2003).Â  If his blackout was caused by the ingestion
of drugs, Black could be found guilty of DWI.Â 
CounselÂs trial strategy in testifying about his personal experience
could have been to support the defense theory that a blackout could be caused
by reasons other than ingestion of drugs.Â 
The first prong of Strickland
has not been met.Â  Additionally, BlackÂs
contention that the stricken testimony tainted the defense is speculative and
does not establish that the result of the proceeding would have been
different.Â  Thus, he cannot meet the
second Strickland prong.Â  No ineffective assistance of counsel is shown
relative to counselÂs attempted testimony.

Â Â Â Â Â Â Â Â Â Â Â  C.Â Â Â Â Â Â Â  JudgeÂs Comments About Experience with a
Driver Who Had Blacked Out

Â 

Â Â Â Â Â Â Â Â Â Â Â  After both sides rested and the
punishment phase was closed, the trial court stated:

I
had a wreck years ago as a young person where a lady had a blackout and she ran
a stop sign and hit us broadside, so I know it can happen.Â  The evidence shows thatÂs just a made-up
defense on your part, particularly, whenever you see what the presentence . . .
contains about what your brother said.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Black argues
that counsel should have objected to the statement and should have made an Âeffort
to attempt to have the judge declare a mistrial and recuse himself.ÂÂ  Due process requires a neutral and detached
trial court. Â Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973); Brumit v. State, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006).Â  ÂAbsent a clear showing of bias, a trial
courtÂs actions will be presumed to have been correct.Â Â Brumit,
206 S.W.3d at 645 (citing Thompson v.
State, 641 S.W.2d 920, 921 (Tex. Crim. App. 1982)). Â The comments of the trial court here do not
reflect bias or partiality.Â  Rather, they
reflect an understanding by the trial court that blackouts can occur without intoxication.Â  Because there was no clear showing of bias,
there was no reason for BlackÂs counsel to object.Â  Black cannot meet the first prong of Strickland.Â  No ineffective assistance of counsel is shown
relative to the trial courtÂs statements about experience with a driver who
blacked out.

(2)Â Â Â Â Â Â Â  Black
Cannot Prevail on His Claim that the Trial Court Failed to Consider the Full
Range of Punishment

Â 

Â Â Â Â Â Â Â Â Â Â Â  Black cites
to the following three statements made by the trial court during the punishment
hearing to suggest that the trial court did not consider the full range of
punishment:

I
try to always assess cases when IÂm asked to do this type of sentencingÂor not
sentencing, but trial of a defendant by way of a bench matter without a jury,
to try to assess it how I think the jury would assess it in Smith County,
Texas.Â  Because I think a defendant
shouldnÂt be handled any differently, whether itÂs a jury listening to the
evidence and resolving the case. 

Â 

.
. . I always try to assess these based upon what I think a Smith County jury
would do in the case in relation to the punishment of cases.Â  I think they would have considered probation,
too.Â  I think they would have considered
it extremely briefly.Â  

Â 

.
. . I donÂt think a jury would spend long thinking about that eligibility for
probation whenever they have someone that they would have just convicted of a
felony DWI, and that they are awareÂat that point, if they had been doing it,
they would have been aware that you were at least charged with this second one.[4]


Â 

Â Â Â Â Â Â Â Â Â Â Â  Black argues
that these excerpts demonstrated that the court foreclosed the opportunity for
community supervision of any kind.Â  He
complains the trial court erred in violating his rights to Âdue process and due
course of law.Â 

A
court denies due process and due course of law if it arbitrarily refuses to
consider the entire range of punishment for an offense or refuses to consider
the evidence and imposes a predetermined punishment.Â  Such a complaint is not preserved for review
unless a timely objection is raised.

Â 

Teixeira v. State,
89 S.W.3d 190, 192 (Tex. App.ÂTexarkana 2002, pet. refÂd) (citations omitted); see Washington v. State, 71 S.W.3d 498,
499 (Tex. App.ÂTyler 2002, no pet.).[5]Â  Black admits in his brief, and the record
demonstrates, that he failed to raise this issue with the trial court.Â  Because this point of error has not been
preserved, it is overruled.[6]Â  See
Tex. R. App.
P. 33.1.

Â Â Â Â Â Â Â Â Â Â Â  In
any event, Black makes no reference to the trial courtÂs statement, ÂIÂve
considered, Mr.Â Black, probation for you.ÂÂ 
Omitted also was the courtÂs statement, ÂI donÂt think [the jury] would
spend much time contemplatingÂwhile they would have considered it, just as IÂve
considered it, I donÂt find [community supervision] to be appropriate.ÂÂ  Had this point of error been preserved, the
record would nevertheless fail to support BlackÂs contention that the court did
not consider the full range of punishment.

Â Â Â Â Â Â Â Â Â Â Â  We affirm the trial courtÂs
judgment. 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Josh
R. Morriss, III

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  February
1, 2011Â Â Â Â Â Â Â Â  

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  February
2, 2011

Â 

Do Not Publish

Â 

Â 











[1]Originally appealed to the Twelfth Court of Appeals,
this case was transferred to this Court by the Texas Supreme Court pursuant to
its docket equalization efforts.Â  See Tex.
GovÂt Code Ann. Â§ 73.001 (Vernon 2005).Â 
We are unaware of any conflict between precedent of the Twelfth Court of
Appeals and that of this Court on any relevant issue.Â  See
Tex. R. App. P. 41.3.





[2]The
result of the HGN test did not indicate intoxication because Black was not
under the influence of depressants.Â  

Â 





[3]A
video recording of the stop and arrest depicting these events was played during
the bench trial.Â  





[4]The
trial court referred to a subsequent September 14, 2009, DWI discussed in our
cause number 06-10-00132-CR.Â  

Â 





[5]Black
argues that failure to consider the entire range of punishment is a structural
error and need not be preserved by contemporaneous objection. Â This argument has been made before the Texas
Court of Criminal Appeals in the past. Â See Brumit, 206 S.W.3d at 645. Â The court declined to decide whether such a
complaint must be preserved by a contemporaneous objection, instead holding
that the trial court in that case considered the entire range of punishment.Â  Thus, we rely on our precedent and that of
the Twelfth Court of Appeals, holding that BlackÂs complaint required an
objection to the trial court below in order to preserve the issue for
review.Â  Willis v. State, No. 12-09-00195-CR, 2010 WL 1215145, at *1 (Tex.
App.ÂTyler March 30, 2010, no pet.) (mem. op., not designated for publication).

Â 





[6]Black
does not complain that counsel was ineffective for failing to raise this issue.